**In re Lindell TINSLEY, Respondent, A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 89–954.**

District of Columbia Court of Appeals.

Argued Nov. 9, 1990.

Decided Dec. 3, 1990.

Ross T. Dicker, Asst. Bar Counsel, with whom Thomas E. Flynn, Bar Counsel, Washington, D.C., was on the brief, for petitioner.

R. Kenneth Mundy and David Carr, Washington, D.C., for respondent.

Before ROGERS, Chief Judge, and NEWMAN and FARRELL, Associate Judges.

NEWMAN, Associate Judge:

This matter comes before us on the Report and Recommendation of the Board on Professional Responsibility ("Board"). Involved are six separate matters, which have been consolidated for review. After evidentiary hearings on each of these matters, the Board found fifteen violations of the Disciplinary Rules and recommended that respondent be suspended for one year with reinstatement conditioned upon a showing of fitness to practice. We accept the Board's findings, agree with its analysis, and adopt its recommendation.

I. Respondent's Disciplinary Violations

Following is a brief review of the Board's findings in six separate disciplinary matters concerning respondent, as set out in the Board's Report and Recommendation ("Report").

Bar Docket No. 285–84 (The Davis Matter).

While serving as court-appointed Conservator of the estate of Betsy Davis from March 30, 1982 through June 13, 1984, during which time Davis resided in a nursing home, respondent failed to carry out his responsibilities to serve the needs of the estate and Davis's personal needs. Specifically, respondent failed, among other things, to pay the nursing home's monthly charges, to produce rental income from the ward's estate, to file timely accounts, to attend various hearings regarding his Conservatorship, and to respond to requests for information from auditors and the successor-conservator. Eventually, the Auditor–Master concluded that respondent owed Davis's estate $9,093.90 and judgment was entered against him in that amount by the probate court. Thereafter, respondent entered into a settlement agreement with the successor-conservator, wherein he agreed to pay the estate $9000.00.

Based upon this conduct, the Board found that respondent had violated DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice), DR 6–101(A)(1) (undertaking a legal matter which he knew or should have known he was not competent to handle), DR 6–101(A)(3) (neglect), DR 7–101(A)(1) (intentional failure to pursue the client's lawful objectives), DR 9–103(B)(3) (failure to maintain com-

plete records and render appropriate accounts).

### Bar Docket No. 296–86 (The Junkins Matter).

Respondent accepted $750 from Foster L. Junkins to represent him regarding the termination of Junkins's Maryland worker's compensation benefits. Respondent, who was not licensed to practice in Maryland, sent one letter of inquiry to Junkins's employer in August 1985 regarding the loss of benefits, after which respondent did not again contact the employer. He met once more with Junkins, in Maryland, after which the two had little or no substantive contact. When Junkins complained to Bar Counsel through successor-counsel, respondent denied accepting a fee from Junkins. He also failed to respond to Bar Counsel's requests to provide documents relating to his representation of Junkins.

Based upon this conduct, the Board concluded that respondent had violated DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice) and DR 6–101(A)(3) (neglect).

### Bar Docket No. 560–86 (The Gaines Matter).

Respondent was appointed by the court to defend Delberta Gaines in a divorce proceeding. In connection with that proceeding, respondent was charged with failure to file an answer within the time limit set by the court. After a full hearing, the Hearing Committee concluded that no violations had occurred. The Board agreed, and Bar Counsel filed no exceptions.

### Bar Docket No. 396–86 (The Dempsey Matter).

Respondent undertook to represent a client seeking to prevent foreclosure on real estate in the District of Columbia. Respondent filed a Motion for Temporary Restraining Order and Injunctive and Declaratory Relief in the Superior Court and, in a hearing without opposition before the Judge–in–Chambers, obtained a temporary restraining order. On the day before the temporary restraining order was to expire, respondent prepared a Motion for a Prelim-

inary Injunction and Declaratory Relief for filing in court the next day. He gave a copy of the motion to a process server with instructions to serve the defendant in the matter, George Novak. The following day, respondent appeared in court to argue the motion; his pleading contained a certificate of service, which represented that the Motion had been "hand delivered" to Novak. The court granted respondent's motion.

Subsequently, Novak appeared and stated that he had never been served. The court credited Novak's testimony and dissolved the preliminary injunction. At a later show cause hearing, the court noted respondent's admission that he had made a false certificate of service and found him in contempt. This finding was later amended by the court to a Rule 11 violation with a fine.

Based upon this conduct, the Board concluded that respondent had violated DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice).

### Bar Docket No. 122–87 (The Miller Matter).

In early 1982, respondent was retained by the personal representative of the estate of Milton Davis. In 1983 and 1984, respondent filed a First Account and a Restated First Account. In July and August 1984, the Probate Division requested additional clarification and information concerning the Restated First Account, setting September 7, 1984 as the deadline. Respondent filed a partial response on that date.

Thereafter, respondent, who had moved to a new law office without notice to the court or his client, took no further action, failed to keep himself aware of the status of the case, and failed to respond to inquiries from his client and a court-appointed auditor. In September 1986, the personal representative terminated respondent and engaged a successor-counsel, who asked respondent to turn over his files. Once again, respondent failed to respond, leaving successor-counsel unable to supply the court with documents the court had been seeking for some two years. As a result, at the time of the filing of the

petition in this matter, the estate remained open.

When the personal representative filed a complaint through successor-counsel and Bar Counsel attempted to contact respondent regarding the complaint, respondent sought several continuances, but never responded to the substance of the complaint. He did not appear at the hearing on the complaint, although he was represented by counsel.

Based on this conduct, the Board concluded that respondent had violated DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice), DR 6–101(A)(3) (neglect), DR 7–101(A)(1) & (2) (failure to pursue the client's lawful objectives and failure to carry out his contract of employment), and DR 9–103(B)(4) (refusal to return case files to client upon demand).

### Bar Docket No. 259–87 (The Molina Matter).

In July 1986, respondent was appointed by the court to defend Larry Molina in an uncontested divorce case initiated by Molina's wife. Pursuant to court rules and the order of appointment, respondent was to file an answer within 30 days of his appointment. Counsel for plaintiff informed respondent of plaintiff's desire to obtain a court hearing as soon as possible. Respondent failed to file an answer within the 30 day period and failed to respond to attempts by plaintiff's counsel to contact him.

On October 7, 1986, plaintiff filed a motion for entry of default or, in the alternative, to compel the filing of an answer. A copy of the motion was sent to respondent's address of record, and he did not deny receiving it. However, respondent never filed an opposition to the motion. On December 1, 1986, the court issued an order directing respondent to file an answer or an affidavit in lieu of an answer on or before December 30. Respondent admitted receiving this order, which was mailed to his address of record. Respondent prepared an affidavit in lieu of an answer and left it with a courthouse guard after hours

on December 31, 1986. He mailed a copy of the affidavit to plaintiff's counsel on January 15, 1987. The clerk of the court never received the original affidavit. Counsel for plaintiff attempted to file the copy he had received from respondent, but the clerk of the court refused to accept a copy. Consequently, no hearing was scheduled.

On March 3, 1987, plaintiff filed a motion for contempt and other sanctions, alleging that respondent had failed to comply with the court's December 1 order. In addition to setting forth the aforementioned facts concerning the affidavit, plaintiff's motion stated that plaintiff's counsel had placed four calls to respondent's office between February 10 and 18 without response. Respondent filed no opposition to this motion and did not appear at the contempt hearing, which was held on May 15, 1987. Following the hearing, the court entered an order finding respondent in contempt and ordering him to pay a fine of $400 to plaintiff's counsel by June 1. Although he received a copy of the order, respondent never paid the fine or asked the court to reconsider its order.

Upon learning of the order of contempt, Bar Counsel docketed a complaint against respondent on July 30, 1987 and asked him to respond by August 10. Bar Counsel twice granted extensions of the response period, first to September 13 and then to October 2. Respondent still made no response.

Based on this conduct, the Board concluded that respondent had once again violated DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice) and DR 6–101(A)(3) (neglect).

Respondent accepts the Board's factual findings and concedes the Board's conclusions concerning his violations of the Rules. We accept the Board's findings as supported by substantial evidence and adopt them.

### II. Sanction Imposed

Noting respondent's prior disciplinary record, as well as the severity and pervasiveness of his misconduct, the Board rec-

ommended that he be suspended for one year with reinstatement conditioned upon a showing of fitness to practice. Respondent concedes that the Board's recommendation is within the range of appropriate sanctions. However, in his brief, he asks that we adopt an alternative sanction, under which respondent would be required to serve only three months of the recommended one year suspension, while the remaining nine months is held in abeyance pending respondent's completion of a two year probationary period under the supervision of a practice monitor.[1]

The Board based its recommendation on respondent's considerable record of misconduct. As the Board put it:

> The actions complained of in these matters do not appear to be isolated instances in errors of judgment or innocent misunderstandings with clients as to the scope of Respondent's responsibilities. They are illustrative of a deeper problem. Respondent's professional conduct has been characterized by a pervasive carelessness and indifference to his obligations to the courts and to his clients.

Report at 51–52. Noting that in the face of a similar pattern of misconduct it had recommended suspension for one year and a day, *In re Slabach*, No. 87–240 (D.C. March 26, 1987) (consent to disbarment), the Board concluded that the same sanction was appropriate in this case. The Board offered as its rationale for recommending this sanction the need to protect the public from the pervasive and egregious conduct so amply demonstrated here. We agree. *See also In re Jones*, 544 A.2d 695 (D.C. 1988); *In re O'Donnell*, 517 A.2d 1069 (D.C.1986); *In re Fogel*, 422 A.2d 966 (D.C. 1980).

Respondent's misconduct is at least as serious as the conduct in other cases in which the court has deemed a one-year suspension appropriate. *See In re Jones*, 544 A.2d 695 (D.C.1988) (per curiam); *In re O'Donnell*, 517 A.2d 1069 (D.C.1986) (per curiam); *In re Roundtree*, 467 A.2d 143 (D.C.1983) (per curiam); *In re Fogel*, 422 A.2d 966 (D.C.1980) (per curiam); *In re Smith*, 403 A.2d 296 (D.C.1979). Prolonged suspension in these cases has often accompanied a finding of intentional misconduct under DR 7–101. The Board found intentional misconduct in one of the matters now before us. In addition, in evaluating the penalty proposed in a disciplinary case, the court must look to the " 'total picture' of [respondent's] professional conduct and not separate instances of misconduct." *In re Washington*, 541 A.2d 1276, 1283 (D.C.1988) (per curiam). Examining the totality of respondent's misconduct, including his prior discipline as well as the finding of intentional misconduct, we adopt the sanction recommended by the Board, a one-year suspension with readmission conditioned upon a showing of fitness to practice. *See* D.C. Bar Rule XI, § 9(g).

In addition, the Board rejected respondent's proposal for an alternate sanction based on supervised probation. The Board's rationale for doing so was that respondent's conduct failed to meet any of the Board's previously stated criteria for probation: (1) that the offense not be of a serious nature, (2) that the attorney not have a substantial record of prior discipline, (3) that the attorney demonstrate a repentant attitude, and (4) that the cause of the misconduct be attributable to extraordinary circumstances, such as a physical, mental, or emotional crisis or illness which had abated since the time of the violation. *In re O'Dea*, Bar Docket Nos. 53–82, *et al.* (B.P.R. March 9, 1984). In the Board's view, respondent's conduct constitutes a serious problem, which despite a prior disciplinary proceeding that resulted in an informal letter of admonition has continued to

---

1. During the period in which this matter was before the Board, respondent submitted to the Board a letter from a law firm with which he was then associated indicating that the firm was willing to provide supervision during the proposed probationary period. However, that firm has since informed the Board that its association with respondent has ended and that the firm is no longer willing to provide supervision of respondent's practice. At oral argument, counsel for respondent urged a split sanction consisting of six months' probation following a suspension from practice for six months. Counsel offered to supervise respondent during probation.

escalate. The Board also found that, far from displaying remorse for his actions, respondent has instead displayed a callous indifference to the seriousness of his misconduct, as evidenced by his unexplained failure to respond to Bar Counsel's inquiries in these matters. Moreover, the Board found insufficient evidence that supervision would be successful in rehabilitating respondent, a conclusion which in our view also finds support in the callous indifference displayed by respondent toward the needs of his clients. Finally, the Board found that respondent has presented insufficient evidence that his conduct was attributable to extraordinary circumstances, such as a physical, mental, or emotional crisis or illness which had abated since the time of the violation. *See In re Kersey*, 520 A.2d 321 (D.C.1987).

We agree with the Board's findings and adopt its recommendation that supervised probation is not appropriate in this case.

Accordingly, it is:

ORDERED that, pursuant to D.C.Code § 11–2502 (1989 Repl.), respondent, LINDELL TINSLEY, is suspended from the practice of law in the District of Columbia for one year with reinstatement conditioned upon a showing of fitness to practice law. This order shall be effective thirty (30) days from the date of this opinion. We direct respondent's attention to the provisions of District of Columbia Bar Rule XI, § 14 (1989) governing disbarred and suspended attorneys.