**In re John J. STANTON, Petitioner.**

No. 88–1492.

District of Columbia Court of Appeals.

Argued Oct. 24, 1990.

Decided April 18, 1991.

John J. Stanton, pro se.

Samuel McClendon, Asst. Bar Counsel for Special Litigation, with whom Thomas E. Flynn, Bar Counsel at the time the brief was filed, was on the brief for the Office of Bar Counsel.

Before BELSON and FARRELL, Associate Judges, and MACK, Senior Judge.

PER CURIAM:

Petitioner was suspended from the practice of law for a year and a day because of several disciplinary violations. *In re Stanton,* 470 A.2d 272 (D.C.1983) (*Stanton I*).[1] Before us is his second petition for reinstatement filed pursuant to D.C.Bar Rule XI, § 21(5), now Rule XI, § 16(d).[2] We conclude that petitioner's request for reinstatement is foreclosed by principles of *res judicata:* he has offered no reason why the decision of the court denying his first petition for reinstatement is not binding on this division of the court. Independently, we also deny reinstatement substantially for the reasons stated by the Board on Professional Responsibility, whose opinion we adopt in the particulars set forth below.

In *In re Stanton,* 532 A.2d 95 (D.C.1987) (*Stanton III*), we held that petitioner had not demonstrated by clear and convincing evidence his fitness to resume the practice of law under the standards enunciated in *In re Roundtree,* 503 A.2d 1215, 1217 (D.C. 1985). In particular, we looked to the second *Roundtree* criterion of whether respondent had recognized the seriousness of the misconduct that resulted in his suspension. We concluded:

> In our view, it is quite clear that petitioner refuses to acknowledge or appreciate

---

1. The same day, petitioner was suspended for a concurrent sixty-day period for violations of the same disciplinary rules which occurred when he represented other criminal defendants in Superior Court. *In re Stanton,* 470 A.2d 281 (D.C. 1983) (*Stanton II*), *cert. denied,* 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 821 (1984).

2. Rule XI was revised effective September 1, 1989.

the seriousness of his misconduct. For example, when asked at the hearing whether he had considered taking an ethics course during his suspension, he responded: "No. I have never had a problem knowing what the ethics rules require." And when questioned about his responsibility to a criminal defendant who wishes to plead guilty, petitioner made it clear that he would not act differently from the way he did before. *See Stanton I, supra,* 470 A.2d at 274; *Stanton II, supra,* 470 A.2d at 288. When asked at the hearing whether he would assume the role of an advocate for a client who desired to plead guilty, petitioner answered: "Not until after the plea is accepted. Then you start advocating for the best possible sentence. If the guilty plea is accepted, you lose the case, and the client gets convicted. Who wants to advocate for that kind of result?"

*Stanton III,* 532 A.2d at 97.

Upon examination of the present record, we conclude that nothing has changed with respect to petitioner's recognition of the seriousness of his misconduct. Indeed, what is remarkable is that the Hearing Committee in this case, in recommending reinstatement, made in essence the very point urged by Judge Mack in her concurring opinion in *Stanton III,* but which the majority rejected as insufficient to meet the *Roundtree* standard: That petitioner acknowledged his duties to advise his clients who wished to plead guilty, to participate in plea negotiations with the prosecutor, and to insure that any plea offer was clearly set forth on the record, but that he "would not *personally* articulate the guilty plea of a client" in court and would not "*personally* take any action to convince a judge of the voluntariness of a guilty plea of a client during a Rule 11(d) inquiry." Report and Recommendations of the Hearing Committee, at 6 (emphasis by Committee); *see Stanton III,* 532 A.2d at 99 (Mack, J., concurring) (petitioner, while indicating that in the future he would not interfere with his client's plea and would act as an

advisor, "did state ... that he would not *personally* articulate a client's plea of guilty in court") (emphasis in original). *Stanton III* made clear, however, that petitioner was being denied reinstatement because he still "would not assume the role of an advocate for a client who desired to plead guilty," *id.* at 97, which included advocating in open court. *See Stanton I,* 470 A.2d at 276 ("Nevertheless, in direct contravention of his client's often-repeated desire to plead guilty, respondent refused in open court to take any affirmative action to further his client's desires in the matter").

In *Stanton III,* in addressing petitioner's procedural challenge to the fairness of the proceedings leading to his suspension, the court accepted the rule that principles of *res judicata* apply in bar discipline cases so as to prevent litigation of defenses raised, or that might have been raised, in prior disciplinary proceedings. 532 A.2d at 96. The same rule necessarily governs petitioner's showing with respect to acknowledgment of the seriousness of his misconduct: if petitioner's understanding of his ethical duty is exactly the same as it was at the time of *Stanton III,* then he has had a full and fair opportunity to offer that understanding in satisfaction of the *Roundtree* standard, and he will not be heard—by a division of the court—to do so again. Otherwise petitioner could continually apply to the court for reinstatement while adhering to an understanding of his obligation which the court has found contrary to the duties imposed by the canons of ethics on an attorney representing a criminal defendant.

Even if principles of *res judicata* did not bar petitioner's application, we nevertheless would deny the instant petition because we agree with the Board on Professional Responsibility—whose findings we give "great weight," *Stanton III,* 532 A.2d at 97—that petitioner has not met his burden of proof with respect to the other *Roundtree* factors.[3] First, the Board found that

---

**3.** Those factors are, first, the attorney's conduct

since discipline was imposed, including the

[I]ittle evidence was introduced on the Petitioner's activities since his suspension. He was employed as a paralegal during some portions of his suspension but, other than a few exhibits consisting of legal memoranda he wrote, he introduced no evidence about the dates of his employment, whether it was full or part-time, or of any other work he did.

Second, the Board found that, although petitioner was obliged to introduce affirmative evidence of his good character, "[n]o evidence was introduced concerning Petitioner's present character." We agree with the Board's reasoning that

[g]ood character is an important element in a reinstatement proceeding, and every petitioner, regardless of the basis for the suspension or disbarment, must present proof on this issue. The amount of proof needed will likely vary with such factors as the length of the suspension and the circumstances surrounding the misconduct, but it is never an issue to be ignored, as Petitioner did here.

Finally, we agree in substance with the Board's finding in regard to petitioner's showing of present qualifications and competence to practice law:

Petitioner presented minimal evidence of his legal competence. He introduced a document listing the cases he tried *before* his suspension and some brief memoranda he prepared in his post-suspension paralegal position; he also testified about his paralegal work, some of which appeared to involve legal research while other aspects consisted of document organization and fact investigation. There was no testimony about the duration of his paralegal work and, significantly, no testimony from any lawyer who supervised or evaluated his work.

At the time of the hearing (February, 1989), Petitioner had been suspended over four-and-one-half years. Given such a lengthy period of absence from lawyering, Petitioner was obliged to present much more evidence of his present competence to practice law. Testimony from those in a position to evaluate Petitioner's present ability would have been particularly important; evidence of steps the Petitioner has taken to maintain his competence in the law would also have been useful. There was, however, no testimony from anyone for whom Petitioner worked or provided services concerning the level of his competence. Nor did Petitioner himself provide any evidence of steps he has taken to maintain his legal skills.

Thus, while we do not conclude that Petitioner is lacking in qualifications and competence to practice law, we do conclude, based on his failure to present any worthwhile evidence concerning his present learning in the law, that he has not satisfied his burden of proof on this *Roundtree* factor.

In sum, because petitioner has offered no reason why we are not bound by the prior decision denying him reinstatement, and because he has not demonstrated by clear and convincing evidence his fitness to resume the practice of law, the petition for reinstatement must be dismissed.

*So ordered.*

MACK, Senior Judge, separate statement, dissenting:

This case illustrates graphically the concept that law is a specialized language. Mr. Stanton has made impressive progress in the mastery of that language. As a practical matter, no one having evaluated Mr. Stanton's performance in this present appeal (during which he performed the difficult feat of representing himself in a petition for reinstatement to the Bar) could seriously doubt his competence as a lawyer. Indeed, the issues surfacing as a result of his successive appeals, the conclusion of the present division's majority that we are bound by the principle of *res judicata*, coupled with the diverse reasoning of the Board and the Hearing Committee, lead me to suggest that the question of Mr.

___

steps taken to remedy past wrongs and prevent future ones; second, the attorney's present character; and third, the attorney's present qualifi-

cations and competence to practice law. *In re Roundtree*, 503 A.2d at 1217.

Stanton's reinstatement may indeed necessitate further language, coming not only from petitioner, but from this court. Without extensive treatment, I will express my concerns.

1. At oral argument, Bar Counsel expressed an appreciation for the guidance of the *Roundtree*[1] criteria in consideration of requests for reinstatement. Petitioner agreed that *Roundtree* was indeed instructive. Petitioner recited factors[2] which he thought to be relevant to each criterion, but suggested, as did the Hearing Committee,[3] the possibility that rigid application of such criteria could result in abuse. With respect to the second criterion (the criterion that a petitioner making a request for reinstatement must recognize the seriousness of his misconduct), I read Mr. Stanton as saying *that where the so-called misconduct involves an unresolved question on a litigated issue,* the criterion should not require an applicant in every case to express insincere remorse and contrition, but only to represent that "I have given this thoughtful consideration in light of my disciplinary experience" [and hopefully, "I will not repeat this conduct once the question is resolved"]. I find little reason to disagree with petitioner in this respect (nor would, I hope, my colleagues in the final analysis). However, petitioner, in seeking to maintain his position that he has done nothing wrong, has not only led Bar Counsel to repeat, in understandable frustration, that petitioner's "attitude is still the same," but has been extremely successful in focusing the attention of this court on the merits and the pitfalls of the plea bargaining process to the exclusion of other issues.

Thus, during oral argument petitioner was closely questioned as to what he would do in the future with respect to (1) negotiating a plea with the government, (2) advising his client with respect thereto, (3) assisting his client in making a decision, and (4) "implementing" that decision. His representations, essentially those recited before the Hearing Committee, were that he would negotiate with the government to get the best possible plea, would act as an "advisor" at all times but not an "advocate," would assist his client in deciding to waive trial but not in "implementing" the waiver of trial. He told the court that "[it is the] accused [who must] accept the consequences of their decisions." See also the colloquy recited in *In re Stanton,* 532 A.2d 95, 99 (D.C.1987) (*Stanton III*) (Mack, J., concurring).

Therefore, it is not remarkable that the Hearing Committee recommended reinstatement. It did not simply repeat in essence the very point made by my concurring opinion in *Stanton III,* but made its own assessment, going one step further, as follows:

Petitioner states he would not *personally* articulate the guilty plea of a client. Nor would petitioner *personally* take any action to convince a judge of the voluntariness of a guilty plea of a client during a Rule 11(d) inquiry. He would, however, act as an advisor to the client as this inquiry is proceeding.

While one may disagree with petitioner's view of his role in this context, we do not find his position as he has now framed it to be irresponsible, necessarily

---

1. *See In re Roundtree,* 503 A.2d 1215 (D.C.1985).

2. Petitioner listed queries relevant to the five criteria essentially as follows:

  1. Nature and circumstances of the misconduct. What did counsel do? Was he incompetent, corrupt, uncooperative, evasive? Did the misconduct cause harm or prejudice to a client? Is there a record of prior discipline?
  2. Recognition of the seriousness of conduct. Was there evidence on insight, lessons learned, thoughtful consideration?
  3. Conduct since imposition of discipline. What steps have been taken to remedy the wrong? Has there been restitution or service

of the public interest? Has counsel been sued, arrested, *etc.?*
  4. Present character. Is there evidence of dishonesty, character disorders, selfishness? Carelessness? Is counsel thoughtful, concerned about justice and others?
  5. Present qualifications. What is the nature of counsel's work? Has he remained close to legal practice? Is there evidence reflecting his legal ability?

3. The Hearing Committee expressed its concern by stating that it was "uncomfortable" with the "rigid application" of the criteria. [Report and Recommendation of the Hearing Committee at 3.]

inconsistent with his obligations under the disciplinary rules, or in conflict with the rules of criminal procedure.

[Report and Recommendations of the Hearing Committee at 6.]

Although my concurring opinion did not speak to the question of whether a lawyer *personally* should seek to convince a judge of the voluntariness of a guilty plea, I cannot, in retrospect, believe that it is required or even uniformly desirable. Over the years "plea-bargaining" has become just that—"bargaining." The extent to which it has become part and parcel of the criminal justice system raises cause for scrutiny. We have forgotten that in the not too distant past, agreements between prosecutors and defendants were cause for serious concern. *See Machibroda v. United States,* 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). Indeed it was not until 1970 that the United States Supreme Court began to talk of the "mutuality of advantage" (to the State and to the defendant) flowing from the entry of a guilty plea (*Brady v. United States,* 397 U.S. 742, 752–53, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970)) and the following year to recognize that " 'plea bargaining' is an essential component of the administration of justice" which if "[p]roperly administered ... is to be encouraged." *Santobello v. United States,* 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).

Proper administration of the bargaining process requires preservation of a record in compliance with the dictates of Rule 11 of the Federal Rules of Criminal Procedure (or rather our corresponding Super.Ct. Crim.R. 11). Rule 11 does not require a lawyer to vouch for his client's credibility. Indeed the very purpose of the Rule 11 inquiry is to assure that an accused is *voluntarily* surrendering a panaploy of constitutional rights. *See McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). Central to the plea and foundation for entering judgment is the defendant's admission in open court that he committed the acts charged in the indictment (*Brady v. United States, supra,*

397 U.S. at 748, 90 S.Ct. at 1468) and that he is voluntarily offering the plea because he is indeed guilty. In this era of multiple charges, pretrial detention, overburdened courts, mandatory sentencing, and crowded prisons, a defendant may be coerced into entering a plea of guilty for many reasons not associated with guilt. A defense lawyer, who as a matter of routine personally speaks to convince the court of the voluntariness of a plea of guilty, himself walks a tight rope on the periphery of ethical conduct. The issue in the final analysis may well be whether the request of his client is lawful or rational.

Thus, Mr. Stanton's representations leave room for honest disagreement as to whether his future conduct would pose the threat of disciplinary violations. I suggest, however (as did the Board), that an important consideration is not only what the disciplined lawyer would do in the future (an imprecise prediction at best) but what he has done in the past. The truth of the matter is that this esoteric exercise has drawn attention away from the first criterion of the *Roundtree* case—"the nature and circumstances" of the prior misconduct.

2. Petitioner was disciplined for neglect and for intentionally failing to seek his client's lawful objective. *See In re Stanton,* 470 A.2d 272 (D.C.1983) (*Stanton I*), and *In re Stanton,* 470 A.2d 281 (D.C.1983) (*Stanton II*), *cert. denied,* 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 821 (1984). In the factual context in which these violations arose there is a basic overlap; it is clear that there is more at issue than petitioner's attitude toward plea bargaining or his understanding of his role as an "advocate" in that process. In failing to communicate with clients, in failing to investigate charges, in failing to file bond review motions, in failing to honor his clients' rational and lawful requests, whether done intentionally as not being necessary or in the best interests of his clients, or unintentionally as a result of negligence, petitioner has done a disservice to his clients. By petitioner's own account, one of the factors to be balanced in assessing a record of prior discipline for reinstatement purposes

is the question of "harm" or "prejudice" to a client. Such prejudice is apparent from the recitation of petitioner's conduct described in prior decisions of this court, incorporating the opinions of the Board on Professional Responsibility. Apart from overt prejudice, the psychological prejudice that may result has been eloquently expressed. In pointing out the special duty that a lawyer owes to an indigent and incarcerated client, the Board has noted:

> The one person in the complex criminal justice system who is supposed to be unreservedly devoted to the interests of such a client is the appointed lawyer. When that lawyer ignores the views of the client, the client is left completely without assistance in a world that is then unrelievedly hostile.

*See Stanton II, supra,* 470 A.2d at 287.

Unless petitioner is prepared not only to advise his clients but to carry out their lawful and rational requests, he will be denying to the accused the very right that purportedly he has risked his career to fight for—the right of the accused to make a voluntary decision and thus to accept the consequences of that decision. The Hearing Committee, in recommending conditional reinstatement with a one year monitored probationary period, has told us that petitioner has said under oath that he is so prepared.[4] In light of this representation, and because our differences are drawing uncomfortably close to an exercise in semantics, I would vote for the disposition recommended by the Hearing Committee. At the same time, I would remind Mr. Stanton that, where there is no question of professional ethics involved, such question does arise when counsel ignores the legitimate requests of an informed client, poor or rich. I would add that, under appropri-

ate circumstances, it is neither difficult nor diminishing to say "I was wrong."

---

**4.** The Committee noted:

> If *Roundtree* requires a confession of prior error, Petition[er] did not do so.
>
> \*    \*    \*    \*    \*    \*
>
> Nevertheless there is record evidence that Petitioner recognizes that the conduct for which he was disciplined was both serious and in need of modification. Specifically, Petitioner has agreed to file bond review motions whenever clients request them, act more diplomatically with clients, and investigate cases more thoroughly. Moreover, he has agreed not to inform judges hearing guilty pleas of Petitioner's advice to his client not to plead guilty. Petitioner has also testified that he has studied the Disciplinary Rules and agrees to carry them out and avoid violations. [Report and Recommendations of the Hearing Committee at 5–6.]