**In re David J. ONTELL, Respondent.**

**No. 89–951.**

District of Columbia Court of Appeals.

Argued May 21, 1991.

Decided July 3, 1991.

---

Michael S. Frisch, Asst. Bar Counsel, with whom Frederick B. Abramson, Bar Counsel, was on the brief, Washington, D.C., for the Office of Bar Counsel.

Lois R. Goodman, Washington, D.C., for respondent.

Before ROGERS, Chief Judge, and FERREN and FARRELL, Associate Judges.

FERREN, Associate Judge:

The Board on Professional Responsibility agrees with two separate Hearing Committees that respondent, in two unrelated cases, had neglected legal matters, DR 6–101(A)(3), and made misrepresentations to his clients, DR 1–102(A)(4). The Board recommends that we suspend respondent from practicing law for thirty days. Respondent raises three issues on appeal: (1) one Hearing Committee erred in ignoring his motion to dismiss; (2) the other Hearing Committee's Report and Recommendation is void because only two of the three members signed it; and (3) the recommended sanction is too extreme—respondent should be publicly censured or, at worst, allowed to serve his thirty-day suspension at a time of his own choosing during the year after our suspension order. We reject these contentions, order respondent suspended from the practice of law for thirty days, and allow respondent up to ninety days from the date of our suspension order within which to begin his thirty-day suspension.

I.

A.

In July 1985, respondent took over Lottie Bigelow's automobile accident case from another attorney, who was leaving civil practice. Respondent filed suit on her behalf and agreed to allow the insurance company a two and one-half year continuance, for purposes of settlement negotiations, before the company had to file an answer. After Bigelow turned down a settlement offer, the defendant filed its answer along with requests for discovery. Respondent never responded to these requests. Opposing counsel filed a motion to compel an-

swers, which the court granted on April 14, 1988, and respondent ignored. Defendant then filed a motion for default judgment, which was unanswered. The court entered a default judgment and dismissed the case on June 7, 1988. Respondent took no steps to reinstate the case. Nor did he inform Bigelow that her case had been dismissed and that the statute of limitations had run.

Respondent and Bigelow had several telephone conversations about the case after dismissal. At no time during these discussions did he tell her what had happened. In March 1989, Bigelow filed a complaint against respondent with the Board on Professional Responsibility. In May 1989, respondent and Bigelow reached an agreement under which respondent would pay Bigelow $5,530 to settle her claim. Respondent paid this settlement entirely from his own funds.

Bar Counsel charged respondent with neglect, misrepresentation of material facts, and intentional failure to seek client objectives. After Bar Counsel had presented his case before the Hearing Committee, respondent made a motion to dismiss. The Committee declined to rule on the motion, citing lack of authority to do so. The Committee concluded, and the Board agreed, that respondent had neglected a legal matter and had engaged in misrepresentation; the Committee agreed with Bar Counsel's post-hearing concession that he had not proved by clear and convincing evidence that respondent had intentionally failed to pursue his client's objectives. The Committee recommended a thirty-day suspension from the practice of law, to be served at any time of respondent's choosing within a year of this court's suspension order.

B.

Kenneth L. Neimann retained respondent in April 1986 to collect on a commercial invoice. After Neimann rejected a settlement offer, respondent filed suit in June 1986 but was unable to obtain service of process. Respondent took no further action. In February 1987, the Superior Court notified respondent that the lawsuit would

be dismissed within a month if no action were taken. He did nothing. On June 3, 1987, the case was dismissed without prejudice.

Neimann called every three weeks or so about his case while respondent was representing him. On one occasion, feeling harassed by Neimann and embarrassed by his own inactivity, respondent told Neimann that he had obtained a judgment in the District, knowing this was untrue. Respondent added that he told Neimann of the need to enforce the District of Columbia judgment in Maryland, and respondent acknowledged at the hearing that this comment could have misled his client. Neimann discovered the truth, retained other counsel, and eventually obtained judgment. As it turned out, therefore, delay was the only prejudice that respondent caused Neimann. Respondent stipulated and, the Committee concluded, that respondent's behavior constituted neglect and misrepresentation.[1] The Hearing Committee recommended a public censure for respondent's misconduct.

### C.

The Board agrees with both Hearing Committees that respondent's conduct in each case amounted to neglect and misrepresentation. Considering the cases together, the Board recommends that we suspend respondent from the practice of law for thirty days. (The Board rejected the Bigelow Hearing Committee's recommendation that respondent be allowed to choose when, during the year after this court's final order, he would serve his suspension.)

### II.

■ Respondent argues that the Hearing Committee should have granted his motion to dismiss, or, at least, should have ruled on the motion rather than refusing to entertain it. We disagree. Board Rule 7.13 requires Hearing Committees to defer rulings on substantive motions and to include recommendations on such motions in their reports to the Board. We agree with what the Board said in *In re Hyman*, Bar Docket No. 69–79 (B.P.R. Apr. 10, 1981):

> Bar Counsel argues that once he has made a decision to file formal charges (which decision must be approved by a Hearing Committee contact member), only this Board or the [D.C. Court of Appeals] has the authority to dismiss the charges. We agree with Bar Counsel on this procedural issue. Introducing the practice of having motions to dismiss at the conclusion of Bar Counsel's case not only adds a needless element of procedural complexity, but also runs the risk of depriving this Board and/or the Court of a full record upon which to review the proceedings. Moreover, granting such a motion is of little practical value to the parties or to the system, since Respondent is not obligated to put on a defense, particularly if Bar Counsel has failed to make out a *prima facie* case. Thus, rather than granting a motion to dismiss, the Hearing Committee just as easily could write a report to this Board recommending dismissal, while allowing both parties the opportunity to put on whatever additional evidence they wish to before the record is closed.

*Id.* at 10. The Hearing Committee, therefore, acted properly in refusing to rule on respondent's motion.

### III.

■ Respondent next contends that the Hearing Committee's Report and Recommendation in the Neimann matter was defective, and thus a nullity, because only two members signed it. For reasons not of record, the third member of the Hearing Committee, who was present for the testimony and arguments, did not sign the Committee's report or file a separate opinion. Respondent, however, has waived this argument by failing to raise procedural objections when the Hearing Committee filed its report. *See In re James*, 452 A.2d 163, 168–69 (D.C.1982) (attorney waived judicial

---

1. The Hearing Committee also concluded that respondent had intentionally failed to pursue his client's objectives. The Board disagreed.

review of claim of inadequate notice because of failure to raise argument at Hearing Committee or Board level), *cert. denied,* 460 U.S. 1038, 103 S.Ct. 1429, 75 L.Ed.2d 789 (1983). But, even if the argument were properly before us, the Committee's Report and Recommendation is valid. A Committee may conduct a formal hearing with two members. *See* Board Rule 7.9. A hearing before a three-member panel, therefore, may proceed with two members if the third is unable for any reason to complete service. *See id.*

### IV.

■ Finally, appellant contends that the recommended thirty-day suspension is too harsh. He argues that, given the mitigating factors of record, he should receive either a public censure or, at worst, a thirty-day suspension to be served, at a time of his choosing, during the year following issuance of our suspension order. We review the Board's recommended sanction pursuant to D.C. Bar R. XI, § 9(g), which provides that this court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." *See In re Hutchinson,* 534 A.2d 919, 924 (D.C.1987) (en banc).

The Board based its recommendation, to some extent, on the fact that the two cases were separate and occurred over a long period of time.[2] The Board concluded that respondent's conduct constituted two separate instances of neglect, coupled with two separate instances of misrepresentation, and evinced "serious shortcomings in his ability to practice law." Moreover, according to the Board, respondent's conduct in each case involved a material misrepresentation that was designed to serve his own interest (to avoid embarrassment) over his clients interests.

Neglect and failure to seek the lawful objectives of a single client have supported a suspension of thirty days on occasion.

*See, e.g., In re Dory,* 528 A.2d 1247, 1248 (D.C.1987). We have imposed longer suspensions when the neglect has been extreme or coupled with several other violations, *see, e.g., In re Drury,* No. 89–822 (D.C.1990) (four-month suspension for neglect, misrepresentation, and failure to return client's file in case involving one client); *In re Peek,* 565 A.2d 627, 634 (D.C.1989) (four-month suspension for neglect, intentional failure to pursue client's objectives, and misrepresentations in single client case); *In re Landesberg,* 518 A.2d 96, 97 (D.C.1986) (sixty-day suspension for neglect, misrepresentation, failure to return unearned fee and refusal to return client file with one client). We have also imposed longer suspensions when the misconduct involved more than one client. *See, e.g., In re Santana,* 583 A.2d 1011, 1012 (D.C.1990) (per curiam) (Board recommended sixty-day suspension in part because two private clients were neglected); *In re Stanton,* 470 A.2d 281, 282 (D.C.1983) (sixty day suspension for initially failing to seek two clients' objectives and one instance of neglect).

Respondent's violations are more serious than those in cases in which we have approved public censure. *See, e.g., In re Margulies,* No. 88–1032 (D.C.1989) (censure for neglect and conduct prejudicial to administration of justice coupled with misrepresentations to Bar Counsel); *In re Molovinsky,* No. M–31–79 (D.C.1979) (censure for lying to court concerning failure to appear and for failing to appear); *In re Christmas,* No. M–21–76 (D.C.1976) (censure for misrepresenting to client that appeal was pending when attorney allowed dismissal of appeal to improve chances for motion to reduce sentence).

The foregoing cases, taken together, demonstrate that disciplinary violations, involving only one client, can result in suspensions longer than the Board recommends in this case. In fact, the Board says

---

**2.** The Neimann violations took place in 1986–1987; the Bigelow violations occurred in 1987–ed 1988.

that, but for mitigating factors,[3] it would have recommended a sixty-day suspension. The Hearing Committee in the Bigelow matter was extremely impressed with respondent:

We have had full opportunity to view [respondent's] demeanor as a witness. We have concluded that he was totally candid with the Committee.... On no occasion did the Committee conclude that [respondent] tried to make excuses, minimize, rationalize, pretermit or engage in any other of the common devices, short of outright lying, that negatively affect credibility. Moreover, Respondent was candid, forthright, and cooperative with Bar Counsel's investigation.

The Committee also believes that none of the conduct proven to us involved bad faith, corruption, or venality. We believe that [respondent] has made significant contributions to the Bar and the Community. The violations proved here were a product of illness, overload, embarrassment, lapses of judgment, and "burnout," rather than reflective of mental, emotional or moral incapacity as a lawyer. The Committee believes that Respondent can and will take necessary measures and precautions to prevent a recurrence of the conduct shown here.

The Bigelow Committee, of course, considered only one incident, but the Board reviewed two Committee reports and generally shared the Bigelow Committee's view of respondent. Based on the mitigating factors the Board recognized, we conclude that the Board's recommended sanction—a thirty-day suspension—is not inappropriate.

## V.

The Bigelow Hearing Committee recommended *sua sponte*—and the Board rejected its proposal—that we allow respondent to serve his suspension at any time within a year of this court's order imposing the sanction. The Committee made this recommendation because of its perception of the hardship a thirty-day suspension would impose on a solo practitioner. Respondent now relies on that recommendation in urging this court to allow him to serve his suspension at the time most advantageous to him within a year of our suspension order.[4] Arguing on behalf of the Board, Bar Counsel replies there is no record evidence that respondent will be prejudiced by our normal practice of beginning a suspension thirty days after entry of this court's order. *See* D.C. Bar Rule XI § 14(e).[5]

We note the Board's comment in the Bigelow case that there is "no evidence in the record" to indicate that the normal thirty-day delay between this court's suspension order and commencement of the suspension would "be such a severe hardship as to require some amelioration." However, the representations of counsel

---

**3.** The Board cited several mitigating factors. The Board credited the Bigelow Hearing Committee's findings that respondent was candid and cooperative in the disciplinary proceedings. The Board also relied on Hearing Committee findings that respondent had made consistent and important contributions of pro bono work at a significant expense to himself, and he had acted without greed or venal motives. More specifically, respondent's practice concentrated on representing middle and lower income clients in small civil matters. In his best year, 1988, he made $16,011. He netted as low as $9,000 in previous years. Respondent estimated that one-fourth to one-third of his practice had been pro bono. Respondent noted that he had litigated important public service cases. *See Family Div. Trial Lawyers v. Moultrie,* 233 U.S.App.D.C. 168, 169, 725 F.2d 695, 696 (D.C.1984) (challenging constitutionality of scheme for appointing *pro bono* counsel to rep-

resent indigent parents in child neglect proceedings); *In re J.S.R.,* 374 A.2d 860, 861 (D.C.1977) (challenging constitutionality of parental rights termination scheme). It is also important to note that the Board found that Neimann and Bigelow were not prejudiced by respondent's behavior. Neimann obtained the judgment he sought, and respondent paid Bigelow an amount equal to, if not above, what she had expected to receive net of attorney's fees.

**4.** Respondent points to his own financial condition as *prima facie* evidence that the suspension will have a significant financial impact on his already marginal income. See *supra* note 3.

**5.** D.C. Bar Rule XI § 14(e) provides:

Except as provided in sections 10, 11, and 13 of this rule, an order of disbarment or suspension shall be effective thirty days after entry unless the Court directs otherwise.

for the parties at oral argument indicate that respondent's overextended caseload is now under control,[6] and that clients, as well as respondent, may be prejudiced by respondent's having to give up his practice within thirty days. Accordingly, we conclude that the interests of the public, as well as fairness to the respondent, will best be accommodated if we allow respondent to begin his suspension at any time within ninety days of our suspension order—a matter within our discretion. *See* D.C. Bar Rule XI § 14(e), *supra* note 5. Bar Counsel acknowledged at oral argument that respondent's self-imposed controls over his legal practice have been improved in such a manner, and to such an extent, that the likelihood of similar violations has been substantially reduced. See *supra* note 6. Bar Counsel added that he had no objection to our extending the beginning of the suspension period for thirty or sixty days. We therefore are willing to permit respondent extra time specified, if he finds it necessary, to attend to client matters before his suspension begins—provided his clients and the attorneys for adverse parties are informed of his impending suspension. D.C. Bar Rule XI § 14(a)–(c).

We are imposing the suspension in this case not only for deterrent purposes but also because of the importance of making clear to the public that the legal profession and this court do not tolerate the kind of neglect and misrepresentation evident here. On the other hand, we are satisfied that, given organizational changes in respondent's practice and his constructive attitude, he is not likely to repeat the misconduct for which he is to be suspended. Moreover, there is no evidence that respondent is not properly conducting his practice at the present time. On balance, therefore, we see the additional time before suspension begins as a help to clients and respondent alike either in resolving matters expeditiously, without need for new counsel, or in assuring that successor counsel can be enlisted with minimum disruption to pending matters.[7]

This court accordingly accepts the Board's recommendation and orders that respondent shall be suspended from the practice of law for thirty days, to begin on a date respondent selects—and reports in advance to Bar Counsel—within ninety days after this court's suspension order.

*So ordered.*

---

6. Respondent is a solo practitioner who works without any support staff. In December 1987, respondent had a caseload of sixty to seventy matters. By October 12, 1989, he had reduced the load to twenty-five cases.

7. This case does not present a situation where respondent is requesting that we apply a separate legal standard to him because of his particular type of solo practice, in contrast with the standard we apply to lawyers in general. *See In re Rosen,* 470 A.2d 292, 299 (D.C.1983) (special treatment unsuccessfully sought for "street crime practitioner"). As we noted in *Rosen,* our disciplinary rules and sanctions apply equally to all lawyers regardless of their fields of practice or forms of organization. *See id.* Here, respondent has violated the rules and will serve a thirty-day suspension as, presumably, any other lawyer would under the same circumstances. We have never said, however, that the particulars of a case could not affect how a disciplinary action is timed. For the reasons stated, we conclude that the clients' interests, as well as the respondent's personal situation, suggest the desirability of the flexible timing we permit here. Our disposition is limited to the specific facts of this case.