**In re Sonya D. STEELE, Respondent.**

No. 92–SP–588.

District of Columbia Court of Appeals.

Argued June 17, 1993.

Decided Aug. 19, 1993.

---

Sonya D. Steele, pro se.

Leonard H. Becker, with whom H. Clay Smith III, was on the brief, for the Office of Bar Counsel. Joan L. Goldfrank, for the Board on Professional Responsibility.

Before FARRELL and KING, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

The Board on Professional Responsibility has concluded that respondent, Sonya D. Steele, a member of the District of Columbia Bar, violated DR 6–101(A)(3) (neglecting a legal matter), DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice), and Rule 8.4(d) of the Rules of Professional Responsibility (engaging in conduct that seriously interferes with the administration of justice). The Board recommends that respondent be suspended from the practice of law for sixty days, and ordered to pay restitution in the amount of $300. Challenging the Board's recommendation, the Office of Bar Counsel argues that this court should impose the additional requirement that respondent prove her fitness to return to the practice of law. While we agree with the Board's findings of violations and order that respondent be suspended from the practice of law in the District of Columbia for a period of sixty days, and that she pay restitution in the amount of $300, we also find that respondent's conduct raises substantial questions about her fitness to practice law and require that she prove her fitness to do so before returning to practice.

I.

On June 8, 1990, respondent Sonya D. Steele accepted a $300 retainer fee to represent her client as a plaintiff in a landlord-tenant action, assured her client that she would prepare and serve the necessary papers, and later represented to him that a hearing date had been set for October 26, 1990. Prior to that date, the client had settled his case and had attempted, without success, to inform Steele of the settlement. On the supposed hearing date, the client went to court and learned that Steele had

never filed the case. Shortly thereafter, he filed a complaint in the Small Claims Branch and received a default judgment for the $300 he had paid to Steele, plus costs. Steele did not pay the judgment and, in November 1990, her client filed a complaint with Bar Counsel.

Neither Bar Counsel's numerous attempts to inform Steele by mail or by personal service of the pending complaint, nor the Board's order to compel an answer to the complaint, were successful. A June 26, 1991, order to compel a written response to inquiries by Bar Counsel was returned with the notation that Steele had moved.

On August 30, 1991, Bar Counsel filed a Petition Instituting Formal Disciplinary Proceedings charging Steele with violations of DR 6–101(A)(3) (neglecting a legal matter), DR 7–101(A)(1) (intentionally failing to seek the lawful objectives of a client), DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice), and Rule 8.4(d) of the Rules of Professional Responsibility (engaging in conduct that seriously interferes with the administration of justice). The matter was submitted to Hearing Committee No. 9 on December 4, 1991. Bar Counsel argued the violations charged in the petition, except—mistakenly—Bar Counsel treated the original DR 7–101(A)(1) violation as a violation of DR 7–101(A)(2) (failing to carry out a contract of employment).

Steele never appeared at her disciplinary action hearings. During the proceedings, it was disclosed that the process server had located her in Atlanta, Georgia, and had served her with the various pleadings. The Hearing Committee then sent Steele a transcript of the hearing and copies of all exhibits and gave her an opportunity to submit a written rebuttal and any mitigating information. Steele did not respond. The Committee found violations of DR 6–101(A)(3), DR 1–102(A)(5), Rule 8.4(d) of the Rules of Professional Responsibility and the argued DR 7–101(A)(2). It initially recommended that Steele be suspended from practice in the District of Columbia for one year and that her reinstatement be subject to proof of fitness to practice law. The latter recommendation was based on evidence of Steele's "complete disregard for her obligations to her clients or the Court." The Committee subsequently added a recommendation for an order to pay restitution in the amount of $300.

On May 15, 1992, the Board issued its report, reducing the recommended suspension to sixty days and eliminating the fitness requirement. It also dismissed the original charge of violating DR 7–101(A)(1) and declined to uphold the Committee's findings of violation of DR 7–101(A)(2), which had been argued by Bar Counsel.[1] One Board member filed a dissenting opinion in which he explained why he would require proof of fitness.[2]

1. Although issues surrounding the DR 7–101(A)(1) and (A)(2) charges were addressed in the briefs of both parties, the Board's brief acknowledged that a finding that Steele had violated either or both of those sections would not change its recommendation on sanction. Bar Counsel stated at oral argument that if the court decided to impose a fitness requirement, he would not seek a finding of violation of DR 7–101(A)(1) or DR 7–101(A)(2) as a basis for increasing the severity of violations or of the sanction. In light of the positions of the parties, the court will not pursue the question of whether the Board erred in its handling of these alleged violations, or the further question of whether the court itself should resolve the matter on the basis of the Hearing Committee's findings of fact and the record.

2. The dissent contends that the Board should consider the purpose of the 1989 amendment to

the disciplinary rules which eliminated the prerequisite suspension of more than a year for imposition of a fitness requirement. It states: "[t]he rule was undoubtedly changed to give the Board and the Court the opportunity to require proof of fitness in appropriate cases regardless of the length of the suspension...." Appropriate cases, the dissent argues, include situations like this one, in which the actual misconduct does not warrant a lengthy suspension but the attorney's fitness is called into question. The dissent adds that requiring proof of fitness in this case is not inconsistent with other decisions because the rule change is so new. The court, the dissent suggests, has not yet imposed a proof of fitness requirement in conjunction with a three-month suspension because, in the period following adoption of the amendment, the court has not had occasion to deal with conduct like that present in this case.

On May 25, 1992, while Bar Counsel's motion for reconsideration—advancing the position that the issue of specific charges under DR 7–101(A) should be remanded to the Committee and that the sanction should include the fitness requirement—was pending before the Board, Steele sent a letter to Bar Counsel. It stated in part:

> I voluntarily ceased the practice of law in the District of Columbia in June 1991, and left the jurisdiction due to personal matters of an extremely private nature. I understand that [my client] filed a complaint against me, but due to my uncertain living arrangements and personal problems at the time, I did not stay on top of the situation....
>
> Although I do not ever intend to return to the District of Columbia or practice law again, I would like to address this matter and resolve it.... My life has recently improved from the personal problems I experienced in 1991, and I am now more emotionally stable.
>
> Please advise me as to what steps, if any, I may take at this time.

Although Bar Counsel advised her of the pending matter before the Board and recommended she address her concerns to the Board, Steele never took further action regarding her conduct and the related charges.

Bar Counsel's motion for reconsideration was denied in an order signed by only the Chairman of the Board on Professional Responsibility. Counsel for the Board assured the court at oral argument that all members of the Board were aware of the contents of Steele's letter at the time the motion was denied.

At this juncture there is no dispute as to whether Steele committed the violations found by the Board, and we agree with those findings. The court's task is to de-cide whether to impose the recommended discipline, and whether to include with it a requirement of a showing of fitness as argued by Bar Counsel. As there is no challenge to the recommended sixty-day suspension and restitution, we will direct our discussion to the matter of the fitness requirement.

## II.

The standard this court has applied in disciplinary proceedings is to adopt the Board's recommendations regarding sanction "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C.Bar R. XI, Sec. 9(g) (1992); *see also In re Delate,* 579 A.2d 1177, 1179 (D.C.1990); *In re Hutchinson,* 534 A.2d 919, 924 (D.C.1987) (en banc); *In re Morris,* 495 A.2d 1162 (D.C.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986).

■ In applying the first part of this standard, we have measured consistency between cases by comparing the gravity and frequency of the misconduct, any prior discipline, and any mitigating factors such as cooperation with Bar Counsel, remorse, illness, or stress. *See In re Kennedy,* 605 A.2d 600, 604 (D.C.1992) (per curiam); *In re Lenoir,* 585 A.2d 771, 774 (D.C.1991) (per curiam) (citing *In re Hutchinson, supra,* 534 A.2d at 924; *In re Haupt,* 422 A.2d 768, 771 (D.C.1980) (*Haupt I*); *In re Smith,* 403 A.2d 296, 303 (D.C.1979)).

■ The 1989 change in Rule XI, Sec. 3(a)(2), which for the first time allows a fitness requirement for a suspension of any length—not just suspensions over one year—is so recent that relatively few cases exist from which we can make comparisons to determine consistency or inconsistency.[3]

---

**3.** Rule XI, Sec. 3(a)(2), as amended in 1989, provides that one available sanction is "[s]uspension by the Court for an appropriate fixed period of time not to exceed three years. *Any order of suspension may include a requirement that the attorney furnish proof of rehabilitation as a condition of reinstatement.* In the absence of such a requirement, the attorney may resume practice at the end of the period of suspension without further order of the Court." (Emphasis added).

This provision differs substantially from the previous two rules that governed suspension and the fitness requirement: Rule XI, Sec. 3(2), which stated that "[a] suspension of 1 year or less *shall not require* proof of rehabilitation. A suspension of more than one year *shall require*

*See In re Cooper,* 613 A.2d 938 (D.C.1992) (*Cooper II*) (misappropriation under circumstances equivalent to simple negligence and admitted cocaine addiction—sanction of suspension for six months and fitness requirement); *In re Tinsley,* 582 A.2d 1192 (D.C.1990) (pattern of carelessness and indifference to obligations to court and clients in six separate cases—sanction of suspension for one year and fitness requirement); *In re Delate, supra,* (counsel's virtual abandonment of conservatorship responsibilities in two cases and an unwillingness or inability to come to grips with responsibilities over broad range of activities over a long period of time—sanction of suspension for six months and requirement of proof of fitness); *In re Greenspan,* 578 A.2d 1156 (D.C.1990) (failure to attend meetings and supply information to Auditor–Master and to respond to Bar Counsel inquiries regarding these failures by counsel suspended in Maryland for dishonesty—sanction of suspension for 180 days and requirement of proof of fitness); and *In re Rosen,* 570 A.2d 728 (D.C.1989) (misrepresentation of material facts in applying for admission to Maryland bar—sanction of suspension for nine months and requirement of showing of fitness).

Since the adoption of the amendment, there have also been a number of cases in which suspensions of a year or less have not been accompanied by a fitness requirement. *See, e.g., In re Ontell,* 593 A.2d 1038, 1041 (D.C.1991) (neglect of two legal matters, including two separate instances of misrepresentation—suspension for thirty days); *In re Santana,* 583 A.2d 1011 (D.C.1990) (per curiam) (neglect of two separate legal matters, including failure to file documents, to communicate with clients and to notify clients of change of address—suspension for sixty days); *In re Foster,* 581 A.2d 389 (D.C.1990) (per curiam) (ne-

glect, intentional failure to seek client's lawful objectives, and intentional failure to carry out contract of employment—suspension for thirty days). Notwithstanding the variety of cases, no post-amendment decisions have addressed circumstances similar to those of the present case.

We are satisfied that the lack of precedent makes it impossible to conclude that imposition of the Board's recommended sanction here would be inconsistent with discipline imposed in other cases for comparable conduct. But we observe that the paucity of authority underscores the fact that the disciplinary system is still developing a body of consistent precedent as to when a fitness requirement should be imposed along with suspensions of relatively short duration. Inevitably, as that body of precedent takes shape, it will reflect our view of the sorts of circumstances that warrant imposition of a fitness requirement. We therefore turn to the second test expressed in our standard for according deference to recommendations of the Board—whether permitting Steele to resume practicing law at the end of her sixty day suspension without a showing of fitness would be "unwarranted."

In determining the proper sanction, our foremost concern is the need to protect the public, the courts, and the legal profession. *Hutchinson, supra,* 534 A.2d at 924; *In re Reback,* 513 A.2d 226, 231 (D.C.1986) (en banc); *Smith, supra,* 403 A.2d at 303; *Haupt, supra,* 422 A.2d at 771; *see also Lenoir, supra,* 585 A.2d at 774. Our purpose in conducting disciplinary proceedings and imposing sanctions is not to punish the attorney; rather, it is to offer the desired protection by assuring the continued or restored fitness of an attorney to practice law. *In re Kennedy,* 542 A.2d 1225, 1228 (D.C.1988).[4]

proof of rehabilitation, to be demonstrated in a reinstatement proceeding...." (emphasis added), was to be read in conjunction with Rule XI, Sec. 21(1), which stated that "[n]o attorney suspended for more than a year ... may resume practice until reinstated by order of this Court...."

4. Prior to the 1989 rule change, these considerations were used to determine whether a suspension of more than a year should be imposed in order to trigger the fitness requirement. *See Reback, supra,* 513 A.2d at 233 (imposing suspension for six months—instead of a year and a day—was sufficient since the protection of the public, the courts, and the legal profession was not in danger); *Hutchinson, supra,* 534 A.2d at

■ In the circumstances of the present case, which concerns not only respondent's neglect of a legal matter but also her failure to cooperate with Bar Counsel, her failure to provide information to explain the misconduct, and her acknowledgment of unidentified personal problems that adversely affected her emotional stability and caused her to abandon a client's case, we have come to the conclusion that we cannot be reasonably assured of the fitness of respondent to engage in the practice of law without requiring her to demonstrate her fitness before resuming practice. In other words, to fail to impose that requirement would be unwarranted.

We are not persuaded by the Board's assertion that, because Steele's misconduct was not egregious, a suspension will be an adequate sanction.[5] The letter she sent to Bar Counsel refers to "personal matters of an extremely private nature" and to the fact that her "life has recently improved from the personal problems [she] experienced in 1991, and [she is] now more emotionally stable." Without further clarification or explanation by respondent, these statements are both ambiguous and troubling. Against the background of respondent's inability to handle her client's case, these statements do not provide the court with reasonable assurance regarding her present ability to practice law.[6] We cannot assume that the passage of time alone has been adequate to guarantee that respondent is now a reliable attorney. With the passage of time, she writes, she has become "more stable," but the question that must be answered is whether she is sufficiently stable to practice law. The vague

letter does not provide an answer, nor does it furnish a basis for concluding that respondent's violations arose from specific extraordinary circumstances that no longer exist. *See Tinsley, supra,* 582 A.2d at 1196.

Although we have not yet undertaken to enunciate a precise standard as to when a fitness requirement should be imposed, and perhaps should go no further than to state that we must be reasonably assured of fitness to practice, our guidelines for evaluating petitions for reinstatement are instructive. Upon assessing a petition for reinstatement, we generally consider

> (1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law.

*In re Roundtree,* 503 A.2d 1215, 1217 (D.C. 1985). *See also* Rule XI, §§ 16(d)(1)–(d)(2); *In re Brown,* 617 A.2d 194, 196 (D.C.1992); *In re Stanton,* 589 A.2d 425, 426 (D.C. 1991) (per curiam) (*Stanton IV*), *cert. denied,* —— U.S. ——, 112 S.Ct. 1178, 117 L.Ed.2d 422 (1992).

Here, as in *Roundtree,* our concern is that Steele's "resumption of the practice of law will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest." *Roundtree, supra,* 510 A.2d

924 (sanctioning the attorney to suspension for only one year because the need to protect the public and the courts was not strong, the lawyer's moral fitness was not in question, and his remorse was sufficient). The new rule does not eliminate consideration of such factors; it allows the court to address the genuine concerns on which these factors are based without being unnecessarily distracted by the calculation of the length of suspension.

5. We express our concern about the length of time it takes to complete reinstatement proceedings. At oral argument, we were informed that it now takes approximately eighteen months.

We recognize that the fitness requirement imposes a heavy burden on the disciplined attorney and suggest that the Board consider the possibility of expediting such procedures.

6. We recognize that respondent also expressed an intent not to return to the practice of law in the District of Columbia. Indeed, she indicated that she does not intend to return to the practice at any time. In order to offer adequate protection to the public, the courts, and the profession, we cannot rely on these statements alone. Instead, we must take the measures necessary to make sure she is fit to practice law.

at 1217 (citing Rule XI, § 21(5)). In the circumstances of this case, the passage of a sixty-day period of suspension, without more, will leave the court as uninformed as it is now with respect to the last four of the enumerated factors. Accordingly, the imposition of just a suspension and restitution is "unwarranted."

In view of the foregoing, we adopt the Board's findings of violations and its recommendations for sanctions, but with the added requirement that Steele prove her fitness to return to the practice of law.

*So ordered.*

FARRELL, Associate Judge, concurring:

I join entirely Judge Belson's opinion for the court, and write only to suggest that this court should consider amending D.C.Bar Rule XI, § 16 to give the Board flexibility it currently appears to lack in treating petitions for reinstatement. I refer to the present obligatory procedure whereby a Hearing Committee must first conduct a hearing on every petition not dismissed on initial screening by the Board, to be followed by Board review (and a second level of "findings and recommendation") and ultimate consideration by this court. Section 16(d). Despite repeated adjurations in the rule to "prompt[ness]" in the conduct of this process, we were told at argument, as Judge Belson points out, *ante* at n. 5, that the process currently takes about eighteen months. The result is that someone like respondent, suspended for sixty days with (as we impose) a requirement of showing rehabilitation, will suffer a *de facto* suspension of more than a year and a half. It takes little insight to understand that that reality may induce great reluctance by the Board to add the condition of showing fitness to suspensions of relatively short duration.

I believe the Board should have discretion to adjudge some petitions favorably (with a corresponding recommendation to the court) without need for referral to a Hearing Committee, at least upon concurrence of Bar Counsel. More problematical might be a change permitting the Board to approve some petitions and allow resump-

tion of practice (perhaps following short suspensions) without awaiting this court's order. Also, in a case such as this where a particular primary concern underlies imposition of the requirement to show fitness (*i.e.*, a confession of past "emotional[ ] [in]stab[ility]"), the rule should make clear that the Board, in the recommended suspension order, may specify and simplify the showing of fitness the respondent will be required to make. I, and I am sure my colleagues, would welcome suggestions by the Board and Bar Counsel for expedition of this process, at least in some cases.