**In re Lindell TINSLEY, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 94-BG-1668.**

District of Columbia Court of Appeals.

Argued Nov. 22, 1995.

Decided Dec. 14, 1995.

Karl W. Carter, Washington, DC, for respondent.

Ross T. Dicker, Assistant Bar Counsel, Washington, DC, with whom Leonard H. Becker, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before TERRY and FARRELL, Associate Judges, and NEWMAN, Senior Judge.

PER CURIAM:

The issue presented on this petition is whether Lindell Tinsley has shown his fitness to be reinstated to the practice of law. *See In re Roundtree,* 503 A.2d 1215 (D.C. 1985). Tinsley contends that he has. The Board on Professional Responsibility and Bar Counsel contend that he has not. We agree with the Board on Professional Responsibility and Bar Counsel on this issue. Thus, we deny the petition for reinstatement.

By order of this court dated December 3, 1990, Tinsley was suspended from the practice of law for one year with a requirement that he show fitness before being reinstated. *In re Tinsley,* 582 A.2d 1192 (D.C.1990). Upon Tinsley's filing of a petition for reinstatement, Hearing Committee Number One conducted a hearing and recommended reinstatement. When Bar Counsel excepted, the Board on Professional Responsibility heard the matter. The Board, in its Report and Recommendation dated December 15, 1994, unanimously recommended against reinstatement.[1]

We concur with the findings and recommendations of the Board substantially for the reasons set forth in its report which is appended hereto.

The petition for reinstatement is denied.

*So ordered.*

1. Two members of the Board did not participate.

*APPENDIX*

DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of:

Lindell Tinsley,

Bar Docket No. 83–93 Petitioner.

REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

Petitioner has petitioned the District of Columbia Court of Appeals, pursuant to Rule XI, § 16(d), for an order reinstating him to the practice of law in the District of Columbia. Petitioner was suspended by the Court on December 3, 1990, for a period of one year, with a requirement that he show fitness before being reinstated. *In re Tinsley,* 582 A.2d 1192 (1990).

Following a hearing on the petition, Hearing Committee Number One recommended that Petitioner be reinstated. Bar Counsel excepts to the Committee's recommendation, arguing that Petitioner has not made a satisfactory showing to warrant reinstatement.

In order to be reinstated under circumstances such as are present here, a petitioner must prove by clear and convincing evidence:

(1) That the attorney has the moral qualifications, competency, and learning in law required for readmission: and

(2) That the resumption of the practice of law by the attorney will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest.

The Court, in *In re Roundtree,* 503 A.2d 1215, 1217 (1985) set forth five factors that must be considered in deciding a petition for reinstatement. They are:

(1) The nature and circumstances of the misconduct for which the attorney was disciplined;

(2) Whether the attorney recognizes the seriousness of the misconduct;

(3) The attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones;

(4) The attorney's present character; and

(5) The attorney's present qualifications and competence to practice law.

The Court stated also that in any reinstatement case, "primary emphasis must be placed on the factors most relevant to the grounds upon which the attorney was suspended or disbarred." (Ibid.)

## Respondent's Misconduct

Petitioner was admitted to practice law in the District of Columbia in 1978. He worked for the District of Columbia Government until 1981, and then commenced practicing as a sole practitioner. The misconduct for which he was suspended involved five separate disciplinary matters.

### Docket No. 285–84 (Davis)

While Petitioner was the Court-appointed conservator of an estate from 1982 through 1984, he failed to pay nursing home charges, failed to file timely accounts for the estate, failed to respond to requests for information, and failed to attend hearings concerning the estate.

### Bar Docket No. 296–86 (Junkins)

Petitioner, who was not licensed to practice law in Maryland, was retained in 1985 to attempt to obtain workman's compensation benefits for his client. His entire services consisted of sending only one letter of inquiry to the Maryland employer. Thereafter, he failed to respond to Bar Counsel's request for information concerning the disciplinary charge brought against him.

### Bar Docket No. 396–86 (Dempsey)

Petitioner attached a certificate of service to a pleading indicating that opposing counsel had been served, although Petitioner did not know whether or not service had been effectuated, and, in fact, service had not been made.

### Bar Docket No. 122–87 (Miller)

Petitioner neglected a case in which he was appointed in 1985 as personal representative. Following his dismissal, Petitioner failed to turn over the case files to successor counsel, and also failed to respond to Bar Counsel's inquiries concerning the disciplinary charges brought against him.

### Bar Docket No. 259–87 (Molina)

Petitioner ignored a court order requiring him to file an answer in an uncontested divorce proceeding, and also failed to respond to opposing counsel's attempts to contact him.

## Findings of the Court of Appeals

Petitioner was found by the Court to have committed numerous violations of the disciplinary rules, including engaging in conduct prejudicial to the administration of justice (DR 1–102(A)(5)); neglect (DR 6–101(A)(3)); intentionally failing to seek the client's lawful objectives (DR 7–101(A)(1)); undertaking a legal matter which he knew or should have known he was not competent to handle (DR 6–1–1(A)(1)); failing to maintain complete records and render appropriate accounts (DR 9–103(B)(3)); failing to carry out a contract of employment (DR 7–101(A)(2)); and refusing to return case files upon demand (DR 9–103(B)(4)).

In suspending Petitioner, the Court adopted the Board's characterization of his conduct as not "isolated instances in errors of judgment or innocent misunderstandings with clients;" rather his actions were illustrative of "pervasive carelessness and indifference to his obligations to the courts and to his clients." *In re Tinsley*, 582 A.2d at 1195. The Court also agreed with the Board's finding that "far from displaying remorse for his actions, respondent has instead displayed a callous indifference to the seriousness of his misconduct." *Id.* at 1196.

## Petitioner's Activities During the Suspension Period

Petitioner was principally employed during the suspension period as an instructor of paralegals at the Barclay Career School. He taught classes on civil litigation, workman's compensation, and domestic relations. In preparing to teach his classes, Petitioner read the Daily Washington Law Reporter

and the District of Columbia Practice Manual.

During the suspension period, Petitioner viewed two videotapes on the Rules of Professional Responsibility. He testified that he has been unable to pay for CLE courses provided by the D.C. Bar, George Washington National Law Center, or the Georgetown University Law Center, and unsuccessfully sought to obtain scholarships from the D.C. Bar and the two law schools. After Georgetown waived the fees, Petitioner took CLE courses at that institution in Advanced Writing, Litigation Before the United States Court of Claims, and Troublesome Issues in Software Licensing.

Petitioner's earnings from teaching paralegal courses at the Barclay Career School usually varied between $340 and $390 every two weeks; during some pay periods, he earned as little as $100. He has no financial assets. His employment at the Barclay Career School was terminated in March of 1994, and he has been unable to obtain other employment.

Petitioner has failed to pay the sum of $400 to another lawyer in the *Molina* matter, imposed as a sanction. Petitioner also has failed to pay a fine imposed by the United States District Court for the District of Columbia, after being held in contempt of court, and has made a payment of only $900 on a debt of $9,000 ordered by the court to be paid in the *Davis* matter. The total amount presently owed by Petitioner in fines and to opposing counsel is in excess of $10,200. He told the Committee that he intends to pay these debts, but, because of his financial situation, has been unable to do so.

Petitioner testified that, during the period of his suspension, he performed volunteer work for his church and at the Alice Deal School, the Marie Reed School, the Banneker School, and the Parks King after school program.

## Bar Counsel's Concerns

Bar Counsel is primarily concerned with three of the five *Roundtree* factors: The steps taken by Petitioner to remedy past wrongs, Petitioner's qualifications and competence, and Petitioner's present character. A discussion of each of Bar Counsel's concerns and Petitioner's responses is set forth below.

### Failure to Remedy Past Wrongs

Bar Counsel emphasizes that, during the lengthy suspension period, Petitioner, except for the $900 payment in the Davis matter, has made no effort whatsoever to reduce the amounts he has been ordered by several courts to pay, nor has he suggested or offered to any of his creditors a plan of repayment. In Bar Counsel's view Petitioner's conduct in this respect constitutes virtually a complete failure to remedy past wrongs.

Petitioner asserts that his failure to pay his debts is due to lack of funds. He claims he barely has enough money to buy food and clothing for his wife and four children. The Hearing Committee sympathized with Petitioner's financial condition, noting that he "could not even provide support for his family with the minimal money he earned."

### Present Qualifications and Competence

Bar Counsel believes that the evidence with respect to this factor falls far short of clearly and convincingly establishing that Petitioner is presently qualified and competent to practice law. Bar Counsel argues that Petitioner "has failed to demonstrate that he is able to practice law in any area of the law, and there is no evidence that he has undertaken a course of study to prepare him in any area." Petitioner contends that his qualifications and competence have been sufficiently established by the evidence of his teaching of courses at the Barclay Career School, his practice of reading the Washington Law Reporter and the District of Columbia Practice Manual, his prior experience as an assistant to R. Kenneth Mundy, Esq., in a criminal matter for a period of about three months prior to his suspension, his review of video tapes of the D.C. Rules of Professional Responsibility, and the taking of the three CLE courses at Georgetown University Law Center.

### Present Character

Bar Counsel argues that the evidence completely fails to establish clearly and convinc-

ingly that Petitioner's present character warrants readmission to the practice of law. Bar Counsel points to the fact that the two character witnesses, Oliver Brown and Charles Ferguson, had known Petitioner only for approximately three years at the time of their testimony, knew virtually nothing about the reasons why Petitioner was suspended, and did not have sufficient experiences with Petitioner to make a judgment as to his character.

Petitioner relies almost entirely on the testimony of the two witnesses to establish his present character. Each of those individuals believes that Petitioner's moral standards are of a high level.

### Hearing Committee's Recommendation

Hearing Committee Number One concluded that all of the *Roundtree* factors have been established by clear and convincing evidence, including the three factors of concern to Bar Counsel, and recommended that the Court order Petitioner's reinstatement.

With respect to the failure to remedy past wrongs, the Committee acknowledged that Petitioner "should have made greater efforts to pay some of his debts, or at least contact his creditors to promise that the debts would be paid eventually." However, the Committee apparently believed that Petitioner's adverse financial situation excused his shortcomings in this respect.

The Committee concluded that Petitioner's brief experience working with Mr. Mundy, his "periodic" performance of work for several attorneys, his teaching experience, his reviews of the Washington Law Reporter, and the fact that he listened to two tapes on the D.C. Rules of Professional Conduct were sufficient to establish by clear and convincing evidence that Petitioner presently possesses the requisite qualifications and competence to practice law.

Although indicating it "would have preferred to hear testimony of additional witnesses about Petitioner's present character," and conceding that the two witnesses "have not known Petitioner for a long period of time and were not thoroughly familiar with the details of the disciplinary violations," the Committee concluded that their testimony clearly and convincingly established the present high moral character of Petitioner.

### Discussion

The Board agrees with Bar Counsel that Petitioner has failed to establish by clear and convincing evidence (1) that he has remedied past wrongs, or even has made a substantial attempt to do so, (2) that he is presently qualified and competent to practice law, or (3) that his moral character is such as to warrant his readmission to practice law in this jurisdiction.

### Petitioner Has Not Remedied Past Wrongs

Although Petitioner assured the Committee that he plans to pay in full the amounts of money owed by him, it is significant that he has done almost nothing during the lengthy suspension period to fulfill those alleged intentions. In the absence of any concrete evidence that Petitioner intends to make such payments, the Board can give little, if any, credence to promises made to the Hearing Committee in the context of this disciplinary proceeding.

Petitioner's adverse financial condition is unfortunate, but cannot, in our view, excuse his complete failure to make any substantial effort at least to commence making the payments ordered by the various courts, *i.e.*, to make a good faith effort to remedy his past wrongs.

### Petitioner Has Not Established His Present Legal Competence

In the Board's opinion, Petitioner comes closer to establishing his present qualifications and competence to practice law than establishing either of the other two *Roundtree* factors here under consideration. However, the Board does not agree with the Committee that he has made a clear and convincing showing in this respect.

Petitioner has taught paralegals on a part-time basis, has read the Washington Law Reporter and the District of Columbia Practice Manual, and has taken three CLE courses, none of which was related to the type of practice he intends to engage in, should he be reinstated. Prior to his suspen-

sion, Petitioner assisted Mr. Mundy in his representation of Mayor Barry for a brief period of time in a criminal matter. Petitioner also did a minimum amount of legal work for Mr. Ferguson, one his two character witnesses.

However, as Bar Counsel noted, Petitioner produced no samples of his legal writings prepared for Mr. Mundy or anyone else. And it is significant, we believe, that Petitioner worked with Mr. Mundy for only a few months in 1990, and, in any event, does not intend to practice criminal law. Moreover, the Board is left in the dark as to any details concerning Petitioner's teaching experiences. We are informed of the courses he taught, but have no idea as to the level of his teaching abilities. It may be pertinent to the issue, for all we know, that Petitioner was terminated by the Barclay Career School in March of 1994. There was no testimony from a representative of that school, who presumably could have enlightened the Committee and the Board as to Petitioner's capabilities.

And, finally on this point, the legal work performed by Petitioner for Mr. Ferguson was inconsequential, and tells the Board nothing as to his present legal qualifications and competence.

*Petitioner Has Not Proved Present Good Character*

It may well be that Petitioner's character is unassailable. Bar Counsel produced no adverse evidence, and, of course, was not required to do so. The problem, as the Board sees it, is that the record is woefully lacking in evidence that clearly, convincingly, and affirmatively establishes this *Roundtree* factor.

The two character witnesses had known Petitioner for about three years as of the time of their testimony. Neither had any substantial knowledge regarding Petitioner's misconduct. Mr. Ferguson testified that Petitioner tried to explain why he was suspended, but conceded that he did not listen very carefully, and is not certain as to the reason for the suspension. Mr. Brown testified that he knew very little about the matters leading up to Petitioner's discipline. While the character testimony of those witnesses pointed in the right direction, as far as Petitioner is concerned, it simply was not enough to establish "this important element in a reinstatement proceeding." *In re Stanton,* 589 A.2d 425, 427 (D.C.1991).

It is not unlikely that a representative of the Barclay Career School could have supplied pertinent character testimony. Such testimony might also have been forthcoming from a representative of Petitioner's church, as well as from representatives of one or more of the four schools where he performs volunteer work. But none of them appeared, and we are left to speculate as to the nature of their testimony had they been called as witnesses.

*Conclusion and Recommendation*

The Board concludes that Petitioner has failed to establish by clear and convincing evidence that he has taken appropriate steps to remedy past wrongs, that he is presently qualified and competent to practice law, or that his present character warrants reinstatement.

Accordingly, it is recommended that the Court deny Petitioner's petition for reinstatement.[2]

---

2. Since a considerable period of time will in all probability elapse before the District of Columbia Court of Appeals finally decides this matter, we suggest that it may be in Petitioner's best interest to withdraw the petition here under consideration, and refile it at a time when he believes he has assembled evidence that will support a petition for reinstatement in all respects. See *In re Steele,* 630 A.2d 196, 202 (D.C.1993) (Judge Farrell's concurring opinion).

Thus, Petitioner might consider attempting to remedy the shortcomings of the evidence pre-

sented in this proceeding by taking concrete steps to make the required payments to his creditors, by locating additional witnesses who can testify as to his character, as well as his present legal qualifications and competence, and by taking a course on professional responsibility under the D.C. Rules of Professional Conduct, as well as additional CLE courses which relate to the type of practice he intends to engage in following reinstatement. See *In re: Brown,* 649 A.2d 835 (D.C.1994) and *Matter of McConnell,* (Board Op., Oct. 25, 1994) (Bar Docket No. 495–93)

BOARD ON PROFESSIONAL RESPON-
SIBILITY

By: /s/  James C. McKay

December 15, 1994

All members of the Board concur in the foregoing Report and Recommendation, except Mr. Howard and Mr. Williams, who did not participate.