**In re John J. STANTON, Petitioner.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 95–BG–325.**

District of Columbia Court of Appeals.

Argued Nov. 7, 1995.
Decided Sept. 26, 1996.

John J. Stanton, pro se.

Elizabeth A. Herman, Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before FARRELL and RUIZ, Associate Judges, and MACK, Senior Judge.

RUIZ, Associate Judge:

This is John Stanton's third petition for reinstatement to active practice following his suspension for a year and a day in 1983. Twice on previous petitions, this court has adopted the recommendation of the Board on Professional Responsibility that Stanton not be reinstated. The Board once again recommends against Stanton's reinstatement, concluding that Stanton has failed to adequately establish that the "resumption of the practice of law by the attorney will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive of the public interest." D.C. Bar R. XI, § 16(d)(2). We adopt the Board's recommendation, and deny the petition.

Stanton's continuing difficulty demonstrating his fitness to practice arises from his unwillingness to represent clients in plea proceedings due to his deeply-held beliefs that attorney-assisted guilty pleas are unconstitutional. When Stanton was first disciplined, it was in part because he took the position that helping a client to plead guilty so contravened his proper role as a defense attorney that his only course was to attempt in open court to thwart his clients' attempts to reach dispositions short of trial or dismissal of the case.[1] *In re Stanton*, 470 A.2d 272, 281 (D.C.1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 821 (1984) (*Stanton IA*).[2] In his earlier reinstatement petitions, Stanton amended his position to be that although he would not advocate on behalf of a client's guilty plea in any situation, he also would not actively obstruct a client's independent efforts to plead guilty in court. *In re*

---

1. The original disciplinary actions against Stanton involved findings of a range of misconduct, including neglect of client cases, in violation of Disciplinary Rule (DR) 6–101(A)(3), and failure to seek a client's lawful objectives, in violation of DR 7–101(A)(1). The main issue in this reinstatement proceeding, however, is Stanton's concern regarding attorney-assisted guilty pleas.

2. On the same day, Stanton was suspended from practice for 60 days to be served concurrently with the suspension in this case. *In re Stanton*, 470 A.2d 281 (D.C.1983) (*Stanton IB* ).

*Stanton,* 589 A.2d 425 (D.C.1991), *cert. denied,* 502 U.S. 1098, 112 S.Ct. 1178, 117 L.Ed.2d 422 (1992) (*Stanton III* ); *In re Stanton,* 532 A.2d 95 (D.C.1987) (*Stanton II* ).[3]

■ In his present petition seeking reinstatement, Stanton has further refined his position. Specifically, Stanton states that he has shown his fitness to practice law because he "recognizes his duty to comply with the rulings of the D.C. Court of Appeals so long as they remain in force regardless of his view of their apparent wisdom or folly unless a ruling conflicts with a higher duty, and compliance causes harm that his conscience cannot countenance or condone."[4] Testifying before the Hearing Committee in this case, Stanton clarified his position to be that he will assist any client who "freely and intelligently chooses" to plead guilty and "expressly, directly and specifically requests" Stanton's assistance in doing so. Stanton would assist a client only if he were adequately assured that the plea was voluntary either because the client, rather than Stanton, was able to "announce his decision to plead guilty" in open court by saying "Judge, I want to plead guilty" at the inception of the proceedings, or because the client has given Stanton "expressly, without any equivocation" a "clear directive" to initiate the plea.[5]

Stanton also stated that no client would ever, with proper regard to his interests, choose freely and intelligently to plead guilty to any charged offense. In other words, based on Stanton's concerns with the systemic pressures criminal defendants feel to plead guilty, if a client were ever to indicate a desire to plead guilty and asked for Stanton's assistance in doing so, the client's very indication that he wanted to waive trial would create possibly insurmountable doubt in Stanton's mind that the client was acting freely and intelligently. In its Report and Recommendation, which the Board adopted in its own Report, the Hearing Committee quotes Stanton as stating:

> They say that a lawyer has an ethical obligation to advocate for acceptance of his client's guilty plea. If that is the course the client fully and intelligently chooses, and after considerable thought and contemplation, I ha[ve] decided to accede to that position, because, first, *I do not believe any client in fact will ever make such a choice to have me argue being an advocate for the finding of his guilt[ ].*
>
> . . . .
>
> I would [assist a client in pleading guilty in open court] with a clear, expressed directive from the client. *It is never going to happen.* But if it ever did, I would do it. I would do it because I know that I did not pressure the client to tell me to do it. And number two—I suppose that is reason enough. I would do it and there would not be any doubt in my mind.

(Emphasis added).

■ This court found previously that Stanton's refusal to assist a client in entering a

3. Stanton argued that his refusal to represent clients in pleading guilty was permissible under Rule of Professional Conduct 1.2(c) that stated that "[a] lawyer may limit the objectives of the representation if the client consents after consultation." `

4. In his brief to this court, Stanton also argues that the order suspending him from practice should be rescinded, making this reinstatement petition unnecessary. Specifically, Stanton argues that a) the suspension order was unconstitutional because the Disciplinary Rules, as applied to him, constituted, among other things, an *ex post facto* law, and b) the motions procedure used in the disciplinary proceeding (now reflected in Board on Professional Responsibility Rule 7.13(a)) which deferred ruling on his motion to dismiss the allegations until after the factual record was before the Board, violated Stanton's due process rights because it denied him the opportunity to argue the unconstitution-

ality of the disciplinary rules as they were being applied to him.

As we have already held, Stanton failed to raise the first claim in the disciplinary proceeding in this court that led to the suspension from which he now seeks reinstatement although he was not precluded from doing so; we will not revisit the disciplinary proceeding in this reinstatement case. *Stanton II, supra,* 532 A.2d at 96. We note, however, with respect to the second claim, that we have already resolved it against Stanton in a disciplinary proceeding he faced which resulted in suspension from practice to run concurrently with the present suspension. *Stanton IB, supra* note 2, 470 A.2d at 284.

5. According to Stanton's testimony, a client's statement in response to a plea offer that "[t]hat sounds good. I want to accept that deal," would not meet Stanton's conditions for a client request that would trigger Stanton's assistance in effecting a guilty plea.

guilty plea under circumstances in which the client indicated his desire to plead contravened Disciplinary Rule 7–101(a)(1), which forbids refusing to seek a client's lawful objectives. *Stanton IA, supra,* 470 A.2d at 277; *see also Stanton IB, supra* note 2, 470 A.2d at 289. Under *In re Roundtree,* 503 A.2d 1215, 1217 (D.C.1985), this court must consider whether Stanton has met his burden to prove his fitness to resume practicing law, by clear and convincing evidence, by reference to: 1) the nature and circumstances of the misconduct, 2) his recognition of the misconduct's seriousness, 3) steps taken to remedy past and prevent future wrongs, 4) character, and 5) present competence to practice law. The Hearing Committee, in conclusions which the Board also reached, found that Stanton's denial that any client will ever "freely and intelligently" request his assistance in pleading guilty reflected poorly on the *Roundtree* factors, most notably on Stanton's readiness to prevent future misconduct. The Board further concluded that although Stanton had presented unrebutted evidence of good character, his inability to draw workable distinctions between his philosophical beliefs and his ethical obligations to his clients called into question the *Roundtree* factor concerning character.[6]

■ We adopt the Board's recommendation, and deny the petition for reinstatement. Under Bar Rule XI, § 16(d)(2), the petitioning attorney has the "burden of proof by clear and convincing evidence" to show his fitness. Much of the determination regarding Stanton's fitness to resume the practice of law depends upon the Hearing Committee's opportunity to consider Stanton's testimony at the hearing, and to observe his demeanor, in order to gauge the compatibility between his philosophical beliefs and his obligations to advise and carry out the wishes of individual clients who may, due to any number of circumstances including an aver-

sion to the risks of trial, want to plead guilty. We defer to the Board and the Hearing Committee on findings of fact unless they are unsupported by substantial evidence in the record. *See In re Kennedy,* 605 A.2d 600, 603 (D.C.1992). Although Stanton purports to have pledged to comply with this court's disciplinary rules, we cannot have confidence on this record that such rules will not conflict with what he perceives as a "higher duty" or "create[ ] harm that his conscience cannot condone." Stanton's numerous qualifications to his asserted pledge to follow his ethical obligations in this jurisdiction compel our conclusion that he has not met his burden of proving fitness with reference to the *Roundtree* criteria focusing on future misconduct. Stanton's reinstatement petition is

*Denied.*

MACK, Senior Judge, dissenting:

In this court's two opinions denying reinstatement to petitioner, we noted that our primary concern was petitioner's refusal to assume the role of an advocate for a client who desires to plead guilty. *In re Stanton,* 589 A.2d 425, 426 (D.C.1991), *cert. denied,* 502 U.S. 1098, 112 S.Ct. 1178, 117 L.Ed.2d 422 (1992) (*Stanton III* ); *In re Stanton,* 532 A.2d 95, 97 (D.C.1987) (*Stanton II* ). Since then, petitioner has changed his position, and in this petition for reinstatement he agreed to "advocate for acceptance of his client's guilty plea, if that is the course his client freely and intelligently chooses." He reiterated this pledge before the hearing committee and during oral arguments before this court. In *Stanton II, supra,* I stated that

> we must be extremely careful to distinguish between a lawyer's right to disagree from a philosophical standpoint and his or her pledge to comply with an accepted code of conduct, regardless of the lawyer's

---

**6.** The Board "d[id] not fully embrace" the Hearing Committee's observations regarding Stanton's competence to practice law as evidenced by his present "inability to discern an inappropriate legal argument from an appropriate one" shown in these proceedings.

The Board did not reach another question which Bar Counsel urges upon us as independent grounds to deny reinstatement: that Stanton has been engaging in the unauthorized practice of law since his suspension, in contravention of Bar Rule XI, § 14(g). Like the Board, we are persuaded that Stanton has failed to meet his burden under the *Roundtree* criteria, and do not address the alternative question whether he has engaged in the unauthorized practice of law.

personal feelings about the wisdom of policies or principles underlying that code. 532 A.2d at 100 (Mack, J., concurring). The petitioner has now pledged to comply with the accepted code of conduct, in spite of his philosophical concerns regarding advocacy of guilty pleas.

It is important to note that petitioner is not alone in having concerns about the plea bargaining system. I discussed in *Stanton III, supra,* the fact that "in the not too distant past, agreements between prosecutors and defendants were cause for serious concern." 589 A.2d at 429 (Mack, J., dissenting) (citing *Machibroda v. United States,* 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962)). While the Supreme Court has since the *Machibroda* decision recognized that "[p]roperly administered" plea bargaining "is to be encouraged" (*Santobello v. New York,* 404 U.S. 257, 260, 92 S.Ct. 495, 497–98, 30 L.Ed.2d 427 (1971)), critics of the system remain. Legal scholars have suggested ways to reform the plea bargaining process or to abandon it altogether. *See, e.g.,* Stephen J. Schulhofer, *Is Plea Bargaining Inevitable?,* 97 HARV. L.REV. 1037 (1984); Albert W. Alschuler, *Implementing the Criminal Defendant's Right to Trial: Alternatives to the Plea Bargaining System,* 50 U.CHI.L.REV. 931 (1983). Some jurisdictions have even experimented with bans on plea bargaining. *See, e.g.,* Teresa White Carns & John A. Kruse, *Alaska's Ban on Plea Bargaining Reevaluated,* 75 JUDICATURE 310 (1992); Robert A. Weinberger, *The Abolition of Plea Bargaining: A Case Study of El Paso County, Texas,* 35 UCLA L.REV. 265 (1987).

These law review articles and case studies, in pointing out the history of the guilty plea in Anglo–American law, the degree of dependency on "bargaining" in our present generation, the defects (if not evils) inherent in such process, and the chances of eradication or reform because of differences in attitudes both of the public and the courtroom work groups, make for interesting reading. More significant to the issue here, these discussions suggest the reality, the insight, and the flexibility necessarily attendant to a "properly administered" plea bargain which the United States Supreme Court has encouraged, *Santobello, supra,* 404 U.S. at 260, 92 S.Ct. at 497–98, as well as what may be an "unethical" failure to seek a client's "lawful" objective in violation of Disciplinary Rules.

My colleagues point out that the Hearing Committee reached its conclusion on the basis of Mr. Stanton's statement (presumably based upon his experiences) that he did not "believe" that any client *in fact* would choose to have him be an advocate for guilt [but adding that if a client ever did, "I would do it"].[1] They also note that although the

---

1. An insight into the thinking of one of our most experienced and thoughtful trial judges (as to the "advocate for guilt" phrase) is recorded in our recent opinion in *Wingate v. United States,* 669 A.2d 1275 (D.C.1995), arising on appeal from the denial of a post-trial collateral motion attacking the adequacy of a [*Monroe–Farrell*] pretrial inquiry into defense counsel's allegedly deficient preparation for trial. At the beginning of the inquiry, defense counsel, asked by the trial court to explain the conflict between counsel and client, explained: "I guess it's a strategic basic question whether or not it's in the client's best interest to plead guilty." *Id.* at 1281. At the end of the inquiry, the trial court in finding defense counsel to be prepared for trial, told the defendant that "he had to understand that his counsel was both an *advisor* and an *advocate,* and that often a defense attorney's *best advice* might be that his client should plead guilty, *but that if his client decided not to plead guilty, the attorney's job would be to act as a zealous advocate"....* *Id.* at 1283 (emphasis supplied).

On appeal, in this court, from the denial of the collateral motion, Chief Judge Wagner, dissenting from her colleagues' ultimate holding affirming the conviction, paints a graphic picture of the "advocate for guilt." *Id.* at 1288 n. 1:

1. The following are examples of appellant's efforts to inform the court about his own decision to defend the case and his counsel's attempt to persuade him to enter a plea of guilty while failing to discuss with appellant defense strategy:

[F]rom day 1 [my attorney] has represented me, for day 1 I was arrested, he has always wanted me to cop a plea.

\*   \*   \*   \*   \*   \*

When I lost my job, [my attorney] conveyed to me to again accept the plea offer.... He strongly urged me to accept it.... *From day 1* I decided to fight.... (Emphasis added).

\*   \*   \*   \*   \*   \*

[My attorney]—seems as though he's been working with the Government to plea bargain. *He's not talking about any defense,* he's always talked to me about settling, plea bargain. (Emphasis added).

Board concluded that Mr. Stanton had presented unrebutted evidence of good character, his inability to draw workable distinctions between his "philosophical beliefs" and his ethical obligations "called into question" the *Roundtree* factor concerning character. *In re Roundtree*, 503 A.2d 1215 (D.C.1985).

It is this court that makes the ultimate decision as to whether an attorney may be reinstated although the findings and recommendations of the Board are entitled to great weight. *Id.* at 1217. I believe the majority here has unjustly concluded that Mr. Stanton has not satisfied the *Roundtree* factors for reinstatement. I believe that it ill behooves

us to summarily conclude that a lawyer's unequivocal pledge (before the Hearing Committee and in this court) to follow the Rules of Professional Responsibility cannot be believed because of his general observations about human conduct and his esoteric philosophical views. I respectfully ˙dissent. I would vote to reinstate.

Mr. Wingate (a corrections officer, college educated, Marine Corps veteran who as an irate husband assaulted his wife's paramour) was hardly in an enviable position. He might have made the wrong choice, but he fought for a principle and lost.