**In re John STANTON, Petitioner.**

**No. 03–BG–767.**

District of Columbia Court of Appeals.

Argued Sept. 14, 2004.
Decided Oct. 28, 2004.

---

John Stanton, Washington, pro se.

Elizabeth A. Herman, Senior Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before RUIZ and GLICKMAN, Associate Judges, and NEBEKER, Senior Judge.[*]

PER CURIAM:

In 1983, we suspended petitioner John Stanton from practicing law in the District of Columbia. *See In re Stanton,* 470 A.2d 272 (D.C.1983) (*Stanton I* ); *In re Stanton,* 470 A.2d 281 (D.C.1983) (*Stanton II* ). Before us now is petitioner's fifth request for reinstatement.[1] Hearings having been held on that request, the Board on Profes- sional Responsibility recommends that we deny it.

■ We accept the Board's recommen- dation of denial for the reasons stated in its report, which is appended to this opin- ion. As detailed in the Board's report, petitioner has made no serious attempt, despite numerous entreaties and opportu- nities to do so, to address each of the *Roundtree*[2] factors and thereby demon- strate, by clear and convincing evidence, his fitness to resume practicing law. *See* D.C. Bar R. XI, § 16(d). In lieu of such a showing, petitioner has elected to advocate that, in his words, "the lawless District of Columbia Bar Board on Professional Re- sponsibility should be abolished and re- placed by a full-time professional disciplin- ary fact-finding agency with members sworn to uphold the Constitution of the United States and paid from appropria- tions like civil officers of administrative agencies of the government." We have rejected petitioner's arguments on that score in the past, *see, e.g., Stanton VI,* 757 A.2d at 91; we see no reason to address them again.

■ In view of what it terms petition- er's "propensity to pursue reinstatement petitions which he should know fall short of the *Roundtree* requirements," the Board asks us to order that any future petition for reinstatement filed by petition- er shall be invalid on its face if it does not proffer certain specified evidence. Bar Counsel supports the Board's request, which is motivated by a not unfounded

---

[*] After this appeal was argued, Senior Judge Nebeker was drawn to replace Senior Judge Newman, who was a member of this division prior to his recusal. Judge Nebeker has lis- tened to the oral argument on tape.

1. We denied petitioner's first three requests because we doubted his willingness to con- form his conduct to the Rules of Professional Conduct. *See In re Stanton,* 532 A.2d 95 (D.C.1987) (*Stanton III* ); *In re Stanton,* 589 A.2d 425 (D.C.1991) (*Stanton IV* ); *In re Stan- ton,* 682 A.2d 655 (D.C.1996) (*Stanton V* ). We sustained the dismissal of petitioner's fourth request as insufficient on its face. *In re Stanton,* 757 A.2d 87 (D.C.2000) (*Stanton VI* ).

2. *In re Roundtree,* 503 A.2d 1215, 1216–17 (D.C.1985).

concern that otherwise petitioner "may, as soon as he is permitted to do so by D.C. Bar R. XI, § 16(g), again burden the system with another inadequate petition for reinstatement."

The precise factual proffer that the Board asks us to require of petitioner is not required normally as part of a reinstatement petition. In effect, the Board has furnished petitioner a road map that he might be well advised to follow should he choose to apply again for reinstatement. However, without knowing what other evidence of fitness petitioner might offer, we are loath to make a preemptive determination of the exact evidentiary showing that he will need to make.[3] We do not need to impose such a precondition for the Board to have the ability to protect the disciplinary system from a frivolous or insufficient petition. As we recently explained in *In re Morrell*, 859 A.2d 644, 647–49 (D.C. 2004), a reinstatement petition is required to proffer clear and convincing evidence pertaining to each of the material factors that bear upon the petitioner's fitness. A petition that fails to contain the requisite factual proffer as to each material issue is subject to dismissal at the outset as insufficient on its face. *See* D.C. Bar Rule XI, § 16(d); Board Rules 9.1, 9.2; *see also Stanton VI*, 757 A.2d at 89. The Board therefore possesses all the authority it

needs to dismiss a factually deficient petition from this or any other petitioner seeking reinstatement.

For the reasons set forth in the Board's Report and Recommendation, John Stanton's petition for reinstatement is hereby denied.

*So ordered.*

## APPENDIX

## REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

This matter is before the Board on Professional Responsibility (the "Board") on Petitioner's fifth petition for reinstatement ("Fifth Petition" or "Petition") since being suspended from practice in 1983.[1]

Hearing Committee Number Three, after holding a hearing at which Petitioner testified but produced no other witnesses, issued a comprehensive and well-reasoned report which recommended denial of the petition. Petitioner filed an exception to the Report. *See* Board Rule 13.3.

Petitioner's submissions to the Board and his conduct at oral argument before the Board confirm the correctness of the Hearing Committee's recommendation

---

3. Clearly, though, and at a minimum, petitioner needs to make a persuasive evidentiary showing that, at long last, he acknowledges, appreciates and disavows all the serious misconduct for which he was sanctioned—not only his refusal to assist his clients in connection with their guilty pleas but also his refusal to pursue his clients' lawful objectives in other respects, his neglect of their cases, and his failure to communicate with his clients. In addition, petitioner needs to make a substantial evidentiary showing that he is currently competent to practice law and is otherwise fit to be reinstated. Petitioner has a lot to do to overcome the doubts that exist concerning his good faith, honest desire, and ungrudging

ability to fulfill his professional obligations to his clients.

1. Board Chair Joanne Doddy Fort and Board Member Martin R. Baach, having been members of hearing committees that considered Petitioner's previous petitions for reinstatement, offered to recuse themselves from this proceeding. At oral argument, however, Petitioner stated that he had no objection to their participating in this proceeding and they have therefore participated in the Board's consideration of this matter. *See* Transcript of May 15, 2003 Oral Argument ("Arg.Tr.") at 2–3. A copy of the oral argument transcript is appended to this Report and Recommendation.

and, further, demonstrate that Petitioner has decided that he would rather engage in a diatribe against the disciplinary system than take the actions necessary to meet the requirements for readmission. Accordingly, the Board recommends not only that the Petition be denied, but also that the Court should, in its Order entered herein, provide that a future petition by Petitioner shall be "insufficient or defective on its face" under D.C. Bar R. XI, § 16(d) unless it demonstrates that Petitioner has sincerely and effectively addressed the deficiencies in his presentation in support of this Petition and contains proffers of testimony and other evidence to establish Petitioner's present character and competence to return to the practice of law.

We first address the nature and character of Petitioner's misconduct as found by the Board and the Court in the two underlying disciplinary proceedings. Since this is the latest in a series of petitions for reinstatement, we review salient portions of Board Reports and the Court's decisions on the first four petitions. Next, we present findings of fact, made by the Hearing Committee and supplemented by the Board, based upon the instant Petition. Finally, we set out our analysis and recommendation.

### I. Nature and Circumstances of the Misconduct

The two disciplinary proceedings that resulted in Petitioner's suspension involved misconduct with respect to four clients. As to each of the four clients, Petitioner was found to have violated two rules of the former District of Columbia Code of Professional Responsibility, Disciplinary Rules

6–101(A)(3) (neglect) and 7–101(A)(1) (intentional failure to seek client's lawful objectives).

Petitioner's misconduct was found to be serious. The complaining clients were named Faison, Johnson, Benjamin, and Wilson. We review each in turn.

*Faison.* Petitioner's misconduct with regard to client Faison did not involve the issue upon which Petitioner's attention has been focused in his successive reinstatement petitions, *i.e.*, client guilty pleas, but rather consisted of neglect. He failed to file a bond review motion and failed to take any meaningful action on behalf of his client. The Board's Report summarized:

> Those facts show that in the *Faison* case respondent failed to file a bond review motion when requested to do so by his client; failed to communicate in any significant fashion with his client; failed to investigate the facts of his client's case.

*In re Stanton*, Bar Docket Nos. 31–81 & 38–81 at 5 (BPR Feb. 15, 1983), *aff'd*, 470 A.2d 272, 275 (D.C.1983) (per curiam) (adopting and appending the Board's Report and Recommendation).

The Board's conclusion as to Petitioner's failure to investigate was quite specific, not at all in the nature of "second-guessing" or "Monday morning quarterbacking,"[2] as asserted by Petitioner.

> Respondent himself admitted that the government's case against Faison was speculative in nature. Nevertheless respondent made no effort to locate any witnesses helpful to Faison who could have bolstered his case. Respondent compounded the seriousness of his inactivity by refusing to withdraw as Faison's lawyer when notified by Bar Counsel of Faison's complaint against him.

---

**2.** *See In re Stanton*, Bar Docket Nos. 180–79, 468–79 & 258–80 at 13 (BPR June 15, 1982), *aff'd*, 470 A.2d 281, 287 (D.C.1983) (per curiam) (adopting and appending the Board Report and Recommendation).

To compound matters, respondent refused to take any further action on behalf of Faison after the complaint was filed by Faison. Respondent sought no informal discovery from the prosecutor, initiated no plea negotiations, undertook no investigation, and did not speak to his client except for a brief courthouse cell-block visit when Faison was in court in connection with another case.

*In re Stanton,* 470 A.2d at 275.

*Johnson.* Petitioner's misconduct as to client Johnson was different, but "equally disturbing" to the Board. *Id.* at 276. Client Johnson had a "hopeless case on a drug charge." *Id.* Despite the fact that Johnson repeatedly advised Petitioner of his desire to plead guilty, on the trial date:

> [Petitioner] refused in open court to take any affirmative action to further his client's desires in this matter.

*Id.* The Board found from a review of the transcript that Petitioner "stubbornly refused to give his client even minimum assistance in entering his plea." *Id.* After Johnson showed confusion, the trial judge refused to accept the guilty plea and Johnson proceeded to trial, and was found guilty.[3] *Id.* The Board expressed its view of the seriousness of Petitioner's misconduct:

> Far from offering advice and guidance to the client in order to assist him in achieving his lawful objective, respondent said nothing to his client beyond several times urging him to tell the judge what was on his mind. This conduct falls so far below the standard expected of attorneys in assisting their clients that we have not the slightest hesitation in condemning it as neglect

and as a wilful [sic] failure to pursue the client's lawful objectives.

Respondent's conduct embodies a view of the lawyer's role that we simply cannot accept. Respondent's view seems to be that in a case of disagreement between respondent and his client over the proper course of action to follow, the client is on his own in attempting to follow any course not concurred in by respondent. We think it is clear that, at least as to the fundamental decisions concerning the client's case, it is the respondent's desires, so long as they are lawful, that must control.

*Id.*

*Benjamin.* The third disciplinary complaint, involving client Benjamin, charged failure to seek bond review, failure to communicate, and a refusal to assist the client in entering into a government plea bargain. Petitioner was requested twice by his client to seek review of her bond, first by letter from jail and second by telephone. He took no action and Ms. Benjamin remained incarcerated for seventeen days until her son raised the necessary bail money.

Ms. Benjamin had several charges pending, and she was represented by another attorney on one such charge. The U.S. Attorney made a plea offer to Ms. Benjamin. Respondent opposed the plea offer and her other attorney recommended it. After considering the differing advice from her two lawyers, Ms. Benjamin decided to accept the government's plea offer. At the hearing, at which Ms. Benjamin was to plead guilty, Petitioner volunteered to the Court that he had advised her that the settlement was "improvident and unwise" and asked the Court to take this fact into

---

3. At the end of the trial, Petitioner was removed as counsel. The jury verdict was later vacated, and Johnson ultimately pled guilty to larceny charges and the drug charges were dropped.

account. *In re Stanton*, 470 A.2d at 284. The Court proceeded to accept the guilty plea. The Board expressed its view of the seriousness of this misconduct as follows:

> Respondent's conduct, which is made out by the most clear and convincing evidence possible—his own words transcribed in open court—seems to us to be a serious violation of the Disciplinary Rules. No possible purpose of his client's was served by respondent's spreading his own personal views of the matter on the record after the client had decided to reject his advice. It is not a lawyer's place to seek to vindicate his own views, as opposed to those of his client, before a judge.
>
> . . . .
>
> Only the wisdom and vigilance of the presiding judge prevented respondent's intemperate behavior from frustrating his client's will. The fact that respondent did not succeed in frustrating his client's attempted plea does not weigh heavily in his favor.
>
> On two separate occasions in the instant case, respondent simply overruled his client's stated views on the grounds that he knew better than the client did.

*Id.* at 288–89.

*Wilson.* Petitioner's 1983 discipline also resulted from his representation of client Wilson. The gravamen of the misconduct was neglect, resulting from Petitioner's failure to investigate his client's case. The Board summarized:

> As the Committee pointed out, respondent undertook no investigation or discovery within the period provided for filing a motion to suppress. Since the crime took place at 3:45 a.m. in the morning in an alley, there was a distinct possibility (as respondent himself apparently recognized by his plan to "knock down" the government's case) that there could have been a misidentification. Nevertheless, respondent did not attempt to interview the police officers or the complaining witness; he did not examine the torn shirt to see whether the tear was compatible with the version offered by the witness or by his client; he did not investigate or send someone to investigate the scene of the crime to determine whether lighting at the time of the offense made identification possible.
>
> Respondent made a determination, on his own, that no investigation was necessary because his client was guilty.

*Id.* at 291.

In making its sanction recommendation, the Board found "that a pattern emerges in Respondent's conduct that is most disturbing." *In re Stanton*, 470 A.2d at 278. The pattern involved the following factors. The Board noted:

> First, Respondent arrogates to himself the role of decision-maker in his representation of his clients.
>
> Second, Respondent's habit of keeping his clients largely in the dark about the progress of their cases is deplorable. Third, although not the basis for any disciplinary violation in this case, we think that Respondent's arrogant and abusive manner toward his clients is relevant to the issue of sanction.
>
> Fourth, we are impressed by the fact that respondent does not seem to have the slightest doubt about the correctness of his behavior in routinely overruling his clients' judgments. In his arguments in the various hearing committees before which he has appeared and in this Board and in the papers he has filed, respondent has taken an extreme position: namely, that he is entitled to exercise his professional judgment in almost every situation regardless of the

views of his client. The result of this extreme view is particularly harsh where respondent does not communicate fully or well with his clients. In these situations, the client has little or no opportunity to make his views known, and when he does, his judgment is overruled by his attorney.

*Id.* at 278–79.

## II. *Previous Petitions for Reinstatement*

The Court affirmed the Board's rejection of Petitioner's first petition for reinstatement on October 13, 1987, because Petitioner did not present clear and convincing evidence sufficient to satisfy the five-pronged test elucidated in *In re Roundtree*, 503 A.2d 1215, 1217 (D.C.1985). *In re Stanton*, 532 A.2d 95, 96–97 (D.C. 1987) (per curiam). The Court also ruled that Petitioner could not attack the suspension as unconstitutional due to procedural deficiencies because the doctrine of res judicata barred consideration of this matter where it could have been considered in the original suspension hearings. *Id.* at 96. The Court found that Petitioner had not appreciated the seriousness of his misconduct:

> In our view, it is quite clear that petitioner refuses to acknowledge or appreciate the seriousness of his misconduct. For example, when asked at the hearing whether he had considered taking an ethics course during his suspension, he responded: "No. I have never had a problem knowing what the ethics rules require." And when questioned about his responsibility to a criminal defendant who wishes to plead guilty, petitioner made it clear that he would not act differently from the way he did before. *See Stanton I, supra,* 470 A.2d at 274; *Stanton II, supra,* 470 A.2d at 288.

When asked at the hearing whether he would assume the role of an advocate for a client who desired to plead guilty, petitioner answered: "Not until after the plea is accepted. Then you start advocating for the best possible sentence. If the guilty plea is accepted, you lose the case, and the client gets convicted. Who wants to advocate for that kind of result?"

*Id.* at 97.

In rejecting Petitioner's second petition, *In re Stanton*, 589 A.2d 425 (D.C.1991) (per curiam), the Court concluded that:

> [N]othing has changed with respect to Petitioner's recognition of the seriousness of his misconduct.

*Id.* at 426. In addition, the Court concurred with the Board's conclusion that Petitioner had not met his burden of proof on the other *Roundtree* factors. It observed that Petitioner had submitted little evidence as to his activities since suspension; that he failed to produce affirmative evidence of his good character; and that he presented minimal evidence of his legal competence. While he listed the results in the cases he tried before his suspension, he did not present testimony about the nature and duration of his paralegal work, or any evidence of steps taken to maintain his competence. The Court quoted the Board's conclusions about the level of evidence required as to present competence to practice law:

> At the time of the hearing (February, 1989), Petitioner had been suspended over four-and-one-half years. Given such a lengthy period of absence from lawyering, Petitioner was obliged to present much more evidence of his present competence to practice law. Testimony from those in a position to evaluate Petitioner's present ability would have been particularly important; evidence of steps the Petitioner has taken

to maintain his competence in the law would also have been useful. There was, however, no testimony from anyone for whom Petitioner worked or provided services concerning the level of his competence. Nor did Petitioner himself provide any evidence of steps he has taken to maintain his legal skills.

*Id.* at 427.

The Court affirmed the Board's rejection of Petitioner's third petition for reinstatement on September 26, 1996. The Court ruled that Petitioner had again not met his burden of proof. *In re Stanton,* 682 A.2d 655 (D.C.1996). The Court observed that Petitioner did not carry his burden of satisfying the Court that he would not in the future frustrate clients in their attempts to enter guilty pleas. The Court noted:

> Specifically, Stanton states that he has shown his fitness to practice because he "recognizes his duty to comply with the rulings of the D.C. Court of Appeals so long as they remain in force regardless of his view or of their apparent wisdom or folly unless a ruling conflicts with a higher duty, and compliance causes harm that his conscience cannot countenance or condone."

*Id.* at 657. In his testimony before the Hearing Committee, however, Petitioner had stated his view that no client would ever choose "freely and intelligently" to plead guilty to any charged offense. *Id.* The Court affirmed the Board's conclusion that Petitioner had not demonstrated his readiness to prevent future misconduct. The Court concluded:

> Although Stanton purports to have pledged to comply with this court's disciplinary rules, we cannot have confidence on this record that such rules will not conflict with what he perceives as a "higher duty" or "create [] harm that his conscience cannot condone." Stanton's numerous qualifications to his asserted pledge to follow his ethical obligations in this jurisdiction compel our conclusion that he has not met his burden of proving fitness with reference to the *Roundtree* criteria focusing on future misconduct.

*Id.* at 658.

The Court affirmed the Board's rejection of Petitioner's fourth petition for reinstatement on August 10, 2000. The Board had rejected this petition without a hearing, pursuant to its authority under D.C. Bar R. XI, § 16(d) and Board Rule 9.2, because the petition failed to demonstrate that Petitioner had sufficiently changed his position from that stated in prior petitions; specifically, the petition, on its face, failed to demonstrate that his strongly held views that attorney-assisted guilty pleas are unconstitutional would not continue to interfere with his discharge of ethical obligations to clients. The Board summarized:

> We have examined Petitioner's current Petition for Reinstatement with care. We do not find in it sufficient departure from his previously stated positions to justify reopening the matter and burdening the disciplinary system with yet another plenary proceeding.

*In re Stanton,* Bar Docket No. 288–98, Order, at 6 (BPR Dec. 18, 1998), *aff'd,* 757 A.2d 87 (D.C.2000) (per curiam) (sustaining the Board's order dismissing Petitioner's petition for reinstatement).

The Board noted in the penultimate paragraph of its dismissal order, "[w]e believe that Petitioner has not yet come to grips with the substance of the misconduct which led to his suspension and to the repeated rejection by the Court and the Board of his efforts to gain reinstatement." *In re Stanton,* 757 A.2d at 88.

The Court agreed, finding the petition insufficient as a matter of law. *Id.* The Court stated:

Petitioner did not manifest in the instant petition that he recognized the seriousness of the misconduct for which he was disciplined; that is, he did not indicate that he was prepared faithfully to abide by the disciplinary rules applicable to members of the bar, for the breach of which he was sanctioned. If anything, the petition, as well as petitioner's exceptions to the Board's order and his briefs to this court, indicate that petitioner adamantly believes that he has never engaged in any misconduct. For example, he states, "The history of the disciplinary actions against petitioner is a series of his efforts to comply with the unconstitutional requirement by constitutional means." This statement aptly captures petitioner's inability to accept that, regardless of his personal beliefs, he must conduct himself in accordance with our interpretation of the disciplinary rules as requiring him to fully represent his client, including doing what is necessary to assist (and not to impede) a client who has decided to plead guilty. In light of appellant's failure to make allegations sufficient to satisfy a critical *Roundtree* factor, we must agree with the Board that the instant petition is insufficient as a matter of law. Moreover, a hearing is not necessary because, as we explained in *Stanton IV:*

[I]f petitioner's understanding of his ethical duty is exactly the same ... then he has had a full and fair opportunity to offer that understanding in satisfaction of the *Roundtree* standard, and he will not be heard—by a division of the court—to do so again. Otherwise petitioner could continually apply to the court for reinstatement

while adhering to an understanding of his obligation which the court has found contrary to the duties imposed by the canons of ethics on an attorney representing a criminal defendant.

*Id.* at 89.

III. *The Fifth Petition for Reinstatement*

The Board makes the following findings based upon its review of Petitioner's Fifth Petition.

The Petition itself consists largely of a reiteration of Petitioner's position that the Board and the Court have improperly interpreted the Code of Professional Responsibility to require lawyers to advocate guilty pleas in a manner which is unconstitutional and which invalidates guilty pleas. Fifth Petition ¶¶ 1–3.

Petitioner also contends in the Petition that "BPR practice and procedure are entirely lawless." *Id.* ¶ 9. In this regard, the Petition asserts that the proceedings in 1983 on which his suspension was based denied him due process rights and were unconstitutional. *Id.* ¶¶ 11–15. The Petition then launches an attack upon the decisions denying his four previous reinstatement petitions, including assertions that the original suspension decision was "clearly erroneous and manifestly unjust" based upon "*ex post facto* misconduct." *Id.* ¶ 27.

The Petition does include a "plan" which is "designed to conform his conduct while preserving and protecting the right to voluntary self-incrimination." *Id.* ¶ 36. This plan consists of a several-paragraph recitation of the manner in which Petitioner proposes to handle guilty pleas. This plan entails "careful consultation ... about plea bargains offered" (*id.* ¶ 37); advice that he will pursue dismissal or acquittal if the client decides not to accept a plea bargain (*id.* ¶ 38); and consultation as to how to

announce any decision by the client to accept a plea bargain. *Id.* ¶ 39. Here, Petitioner states:

> Petitioner will advise the client to speak up in court and announce the decision personally but that petitioner will make the announcement if the client prefers to announce the decision through counsel and petitioner will honor the client's preference. If the client does not make his preference known or does not decide how to announce the decision petitioner will advise the client that he assumes the client reserves the prerogative to himself and that petitioner should continue to pursue the result of dismissal or acquittal until the client announces the decision or asks him to announce the decision or to consult further on it.

*Id.* ¶ 39. Petitioner asserts that he will advocate for acceptance of a guilty plea. *Id.* ¶ 40. In addition, he states:

> Petitioner will advise clients that decisions to accept or not to accept plea bargains are not irrevocable and that if in fact unsure or uncertain clients may reconsider and change their minds at any time to accept plea bargains as long as they remain available or to stand trial with the assistance of petitioner's best efforts in pursuit of the best possible result in any event.

*Id.* ¶ 41. Petitioner then concludes:

> This detailed plan meets the applicable requirement for reinstatement, advocacy for a client's decision to plead guilty due to aversion to the risks of trial or any number of circumstances, preserves the client's right to voluntary self-incrimination, and demonstrates petitioner's present competence to practice law and ability to comply fully with the unconstitutional requirement by constitutional means.

*Id.* ¶ 42. Petitioner then recites three "Conclusions/Claims for Relief," *i.e.*, that the orders suspending him should be vacated for "multiple violations of due process"; that the decisions of the Board and the Court requiring advocacy of guilty pleas subvert clients' rights to "voluntary self-incrimination" and unduly limit counsel's right to freedom of expression; and that the Court should revise the Board rules to include "procedural protections and constitutional safeguards of ... administrative agency proceedings" or "conduct de novo review because limited, deferential review of findings and recommendations reported by a lawless regime must have unconstitutional consequences." *Id.* ¶¶ 43–45. In large part, these allegations reiterate claims made in Petitioner's fourth petition.

### IV. *Proceedings Before Hearing Committee Three*

The hearing on Petitioner's Petition was held on May 15, 2002. Petitioner appeared pro se at the hearing and offered only his own testimony and introduced his exhibits ("PX") 1–10. Bar Counsel introduced her exhibits ("BX") 1–18. All exhibits were admitted without objection.

Prior to the conclusion of the hearing, but after Petitioner and Bar Counsel had put on their respective cases, the Committee advised Petitioner of its concern that he had failed to introduce evidence to demonstrate his current good character or to show that his proposed method of handling guilty pleas by clients was workable in practice. The Committee offered to hold the record open and continue the proceedings in order to allow Petitioner to put on additional evidence, but Petitioner declined this opportunity. The Hearing Committee commented on this action in its December 27, 2002 Hearing Committee Report ("H.C.Report") as follows:

Petitioner's self-defeating rejection of this opportunity to close gaps in his case that the Committee candidly brought to his attention signaled to the Committee either that Mr. Stanton enjoyed the process of the pursuit of reinstatement more than he wanted actually to succeed, or alternatively, that he demonstrated extremely poor judgment in representing himself, which effort he would presumably pursue with as much zeal and interest as he would in representing another client.

*In re Stanton,* Bar Docket No. 77–02 at 2 n. 2 (H.C. Dec. 27, 2002).

V. *Findings of Fact*

The Board sets out the Hearing Committee's findings of fact here. This recitation also includes factual findings made by the Committee in its analysis of the record before it. As seen below, the Board makes additional findings as authorized by D.C. Bar R. XI, § 4(e)(7), as to Petitioner's conduct following issuance of the Hearing Committee Report.

1. Petitioner acknowledged that the Court had determined his conduct concerning guilty pleas to be misconduct, and he presented a script which he asserts he would follow in order to comply with his obligation to assist clients wishing to enter guilty pleas. H.C. Report at 9.

2. Petitioner continues to characterize his misconduct as having been determined to be improper "*ex post facto.*" *Id.* at 6.

3. Petitioner denies that any of his clients whose complaints led to his discipline had been "wronged, harmed or prejudiced." *Id.*

4. Petitioner did not remember the nature and circumstances of misconduct for which he was disciplined other than that involving guilty pleas. *Id.* at 6–7.

5. Petitioner apparently believes that these other violations were insignificant and had been "resolved" in prior petitions. *Id.* at 7.

6. Petitioner characterized prior findings by the Board and the Court concerning his negligence in investigation as "second-guessing and Monday morning quarterbacking." *Id.*

7. Based on the foregoing facts, the Hearing Committee concluded that Petitioner has not recognized the seriousness of his misconduct. *Id.* at 8.

8. Petitioner presented evidence that he has been employed steadily since his suspension and there is no evidence of post-suspension legal or financial difficulties. *Id.* at 9.

9. Petitioner has been employed since 1997 as a senior proofreader and editor at a firm that transcribes depositions, trials, and other legal proceedings. *Id.*

10. Petitioner has presented some evidence that demonstrates his understanding of the Court's interpretation of a lawyer's duties relating to advocacy for guilty pleas. Petitioner has pledged to fulfill this role and has devised a plan describing his anticipated actions in plea bargain situations. *Id.*

11. Petitioner failed to present any evidence but his own testimony that this plan of action is plausible and compliant with ethical duties as this jurisdiction has interpreted them, despite a specific request from the Committee to hear from witnesses on the subject of whether Petitioner's plan would work in practice. *Id.* at 8–9.

12. Petitioner has not taken any Continuing Legal Education ("CLE") courses to reacquaint himself with his duties of advocacy, competence, and diligence. Petitioner indicated in the hearing that he sought Bar Counsel's recommendation as

to which classes she would deem appropriate to take. While this evidences some effort on his part, it does not constitute effective action showing fitness to practice. *Id.* at 10.

13. The sole piece of evidence of competence or good character that Petitioner offered in his proceeding was the affidavit submitted by Carlton Anderson, a general manager at Petitioner's firm. Pet'r Reply Br. at 3. This affidavit states that Petitioner is a "trusted employee" and his loyalty and integrity are "unquestioned." H.C. Report at 12. The Affidavit is quoted in its entirety as follows:

> Since July 1998 I have been general manager of Beta Reporting & Videography Services, a firm that transcribes depositions, trials, and other legal proceedings for customers that include government agencies, law firms, trade associations, labor unions, and academic institutions. During my tenure petitioner John Stanton has held the position of senior proofreader and editor responsible for oversight to maintain quality control. Petitioner's knowledge of legal practice is essential to this firm's continued advancement and success. Petitioner is a trusted employee whose loyalty and integrity are as unquestioned as his legal and editorial skills.
>
> I am available to discuss my personal knowledge with any authorized investigator and may be contacted during regular business hours by phone at 202–638–2400 or in person at my office address 910 17th Street NW, Washington, DC.

PX 9.

14. Despite the Committee's offer to hold the record open, Petitioner declined to take the opportunity offered to him to present live character evidence. H.C. Report at 12.

15. The Affidavit of Carlton Anderson did not reflect any awareness by Mr. Anderson of the nature and extent of Petitioner's prior misconduct. *Id.*

16. The Hearing Committee was "not persuaded that Petitioner is presently qualified or competent to practice law." *Id.* at 13.

17. Petitioner's Exhibit 10 is a list of outcomes from all of the criminal jury trials that Petitioner has tried. The list shows that Petitioner's trial experience ended in March 1984. *Id.*

18. Petitioner's handling of this reinstatement proceeding reflected poorly on his current competence to practice law. In unmistakable language, the Committee expressed its desire to hear more evidence on the practicality of Petitioner's plan to comply with advocacy for guilty pleas as well as on Petitioner's character and present competence to practice. Despite the Committee's clear desire to hear more evidence, Petitioner refused this offer and added no new evidence to the record. *Id.* at 14–15.

19. Petitioner's "Reply to Bar Counsel's Brief" also evidences a lack of attention to detail. Petitioner cites Bar Counsel's brief stating "[B]ar Counsel argues that petitioner 'must show an understanding' of his misconduct, *meaning he must 'agree* with the Court's interpretation of the ethical requirements.'" Pet'r Reply Br. at 2 (emphasis added). In fact, Bar Counsel's brief asserted quite the opposite: "[P]etitioner must show an understanding *even if he does not agree* with the Court's interpretation of the ethical requirements." Bar Counsel's Br. in Opp'n at 7 (emphasis added).

20. Petitioner failed to adequately prepare himself for his own reinstatement

hearing. Petitioner's lack of familiarity with the history of his own suspension and reinstatement hearings indicated that he had not reviewed the record in his own case carefully prior to the hearing. H.C. Report at 15.

## VI. *Additional Findings By Board*

The Board makes the following additional findings of fact based on Petitioner's actions subsequent to the hearing before the Hearing Committee:

21. Petitioner displayed disrespect for the disciplinary system that reveals his failure to acknowledge the seriousness of his misconduct, does not portend well for future conduct if readmitted, and displays a lack of competence in his own representation. For example, Petitioner's Brief to the Board opens with the following statement:

> Worthless as a source of fact finding and useless as a tool for legal analysis, the hearing committee report is a model of incompetence and a study in cynicism and bad faith to be discarded or destroyed.

Pet'r Br. on H.C. Report at 1.

22. As another example, at oral argument before the Board on May 15, 2003, Petitioner commenced his presentation as follows:

> You may find this hard to believe, but in the Hearing Committee report that brings most of you here today, as bad as it is, is probably not the worst that I've ever seen filed against me.

Arg. Tr. at 4.

23. Petitioner ascribed to a distinguished member of the Bar the statement that:

> The typical BPR Hearing Committee consists of two toads and a troglodyte, meaning, no doubt, that only a cynical toady would knowingly participate in such an obviously lawless inquisitorial process.

*Id.* at 6.

24. Petitioner's argument consisted of a broad-based and irrational assault on the disciplinary system. As one example, Petitioner stated:

> And the BPR disciplinary process is a corruptible one. It's one that has no rules of practice, no rules of procedure, no rules of pleadings, no rules of evidence. Everything's wide open. Anything goes. And the BPR is free to report whatever it wishes with absolute power and with absolute impunity, making it, in fact, a lawless and irresponsible and even an evil regime with institutional absurdities that demonstrate the adage or the saying that fact or truth can be stranger than fiction.

*Id.* at 8.

25. Petitioner refused to heed the numerous requests by Board members that he focus on issues of relevance to his objections to the Hearing Committee Report. *See id.* at 9, 13–16.

26. Petitioner declined to address the question of why he failed to take the Hearing Committee's suggestion that he present additional evidence. *Id.* at 14.

27. Petitioner acknowledged that he had not kept up with the sentencing guidelines now being used in federal courts and the D.C. Superior Court. *Id.* at 12.

28. Petitioner also acknowledged that he had not consulted with any criminal law practitioner as to the feasibility of his plan for handling guilty pleas. *Id.*

29. Throughout the oral argument, Petitioner persisted in delivering a previously prepared speech condemning all components of the disciplinary system. When "interrupted" with a substantive question by a Board member, he would dismiss the

question as quickly as possible and return to the rest of his speech. *Id.* at 7, 9, 13, 14. This was vexatious conduct which did not appear to reflect a sincere effort to gain readmission to the Bar.

## VII. *Analysis*

The Board agrees with the Hearing Committee that Petitioner failed to carry his burden of proof on any of the *Roundtree* factors. The *Roundtree* factors are: (1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) the attorney's recognition of the seriousness of the misconduct; (3) the attorney's post-discipline conduct, including steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law. *In re Roundtree,* 503 A.2d at 1217–18. We treat these factors in turn.

### A. *Nature and Circumstances of Misconduct*

This conduct has been described previously. The record of the disciplinary cases underlying Petitioner's suspension shows serious misconduct in the nature of neglect and failure to pursue clients' lawful objectives. The misconduct was serious, but not so serious as to call for strict application of the *Roundtree* factors. *In re Borders,* 665 A.2d 1381, 1382 (D.C.1995).

### B. *Recognition of the Seriousness of the Misconduct*

Again, the Hearing Committee found that Petitioner did not present clear and convincing evidence that he recognized the seriousness of his misconduct. We agree with the Hearing Committee in this regard. This *Roundtree* factor has been consistently relied upon by the Court as a predictor of future conduct. If a petitioner does not acknowledge the seriousness of his or her misconduct, it is difficult to be confident that similar misconduct will not occur in the future. Failure to carry the burden on this factor has often been recited as a ground for denial of a reinstatement petition. *In re Molovinsky,* 723 A.2d 406, 409 (D.C.1999) (per curiam); *In re Lee,* 706 A.2d 1032, 1035 (D.C.1998) (per curiam); *In re Fogel,* 679 A.2d 1052, 1055 (D.C.1996). Petitioner is well aware of this factor, since, as set out above, several if not all of his prior petitions were denied in part for his failure to acknowledge the seriousness of his misconduct. Nonetheless, the instant Petition is very much a reiteration of his continuing refusal to accept the fact that he engaged in misconduct. As the Hearing Committee found, Petitioner continues to characterize his misconduct as having been determined to be improper *"ex post facto,"* and he continues, even in this Petition, to attempt to have the findings of violation vacated.

Petitioner continues to believe that the Court erred in finding violations in respect of any of his conduct. He obsessively persists in seeking to have the underlying disciplinary violations vacated, notwithstanding the fact that he has exhausted every avenue of appeal available to him. The fact that Petitioner presented a plan designed to prevent himself from going astray in guilty plea situations does not cure the fact that he still believes he did no wrong. His adamant refusal to acknowledge that his personal beliefs as to guilty pleas interfered with his duties as an advocate suggest that he will continue to place his own judgment above the wishes of his clients.

Despite the fact that his misconduct involved serious neglect, in failing to file bond review petitions and in failing to investigate charges against his clients, Petitioner characterizes these findings as based upon "second-guessing" and "Mon-

day morning quarterbacking." *In re Stanton,* 470 A.2d at 287. He barely recalls, much less acknowledges, the seriousness of his neglect and failure to communicate.[4]

C. *Petitioner's Post–Discipline Conduct, Including Steps Taken to Remedy Past Wrongs and Prevent Future Ones*

Here again, the Hearing Committee found that Petitioner had not carried his burden of proof and we agree. Petitioner set forth in his Petition a script which he presents as his method of dealing with guilty pleas of criminal defendants. This script, if followed, may comply with the requirements for advising clients of their rights as to guilty pleas and assisting them in reviewing guilty pleas,[5] but Petitioner did not put on any evidence that his plan was workable, nor had he consulted with any criminal law practitioner as to the plan's feasibility. He acknowledged that he has not kept up with the sentencing guidelines utilized in criminal cases in the Federal Courts and in the Superior Court nor has he taken any CLE courses. Arg. Tr. at 12, 24.

While he has presented evidence of employment, and there is no evidence of post-suspension legal or financial problems, his work as a senior proofreader in and of itself would not demonstrate any efforts by Petitioner to remedy previous wrongs or prevent future recurrences. Petitioner's failure to take CLE courses has been noted in his prior reinstatement proceedings. Petitioner has had ample opportunity to take CLE courses which would be one

type of action which would tend to militate against future recurrences of the misconduct. The fact that he has not taken even this elementary step is reflective of the lack of seriousness in his effort to seek reinstatement.

D. *Present Character*

Petitioner is required to prove that:

those traits which led to the petitioner's disbarment no longer exist and, indeed, that petitioner is a changed individual having full appreciation of his mistake and a new determination to adhere to the high standards of integrity and legal competence which this Court requires.

*In re Brown,* 617 A.2d 194, 199 (D.C.1992) (quoting *In re Barton,* 291 Md. 61, 432 A.2d 1335, 1336 (1981)). Petitioner failed to produce any substantial evidence on this important element. The Affidavit of Carlton Anderson is clearly not sufficient. Petitioner must be deemed to be aware of the requirement that he present such evidence, because it was an important factor in denial of his second petition for reinstatement. *In re Stanton,* 589 A.2d 425 at 427. The Court has stressed the obvious importance of this factor, and the need for a petitioner to put on live witnesses familiar with the underlying misconduct who can provide credible evidence of a petitioner's present good character. *See also In re Tinsley,* 668 A.2d 833, 838 (D.C.1995) (per curiam) (testimony of two character witnesses insufficient because not familiar with petitioner's misconduct); *In re Fogel,* 679 A.2d at 1056 (same).

---

**4.** It should be noted that in his petition Petitioner answered the portion of the reinstatement questionnaire requiring him to list the offenses or misconduct upon which his suspension was based as follows: " '[V]iew of his role as a lawyer assisting the accused in criminal prosecutions.' " Resp. to Reinstatement Questionnaire ¶ 10(a).

**5.** We question, however, the accuracy of Petitioner's advice that guilty pleas are not irrevocable decisions, and we question whether Petitioner can necessarily assume that a defendant who does not advise Petitioner as to how the guilty plea should be communicated to the trial judge does not wish to plead guilty.

It is particularly telling that Petitioner was unwilling—or unable—to present witnesses to testify as to his good character after the Hearing Committee indicated to him its concern that his evidence on this important factor for reinstatement was inadequate and offered to hold the record open in order to satisfy his burden of proof on this issue.

### E. *Petitioner's Present Qualifications and Competence to Practice Law*

The Hearing Committee was not persuaded that Petitioner was presently qualified or competent to practice law. He offered his pledge of future compliance, but he did not demonstrate, either by the nature of his current employment or by efforts to keep abreast of developments of the law, that he is currently competent. Petitioner has not practiced law since 1983, and he has done nothing to prepare himself for practice at this time. As he was reminded in the Court's denial of his second reinstatement petition, the longer the time since he has practiced law, the more evidence is required to demonstrate present competence to practice law. *In re Stanton,* 589 A.2d at 427. Petitioner presented no evidence on this point, notwithstanding his knowledge—based on the Hearing Committee's unmistakable statements—that his case was deficient in this regard.

The Hearing Committee was troubled by Petitioner's apparent failure to understand certain important legal concepts. When questioned on the doctrine of res judicata, Petitioner indicated his view that the state of a legal issue is unsettled until it is reviewed by the United States Supreme Court. Petitioner's constant misuse of the term "ex post facto" and his reiteration of arguments that have already been rejected many times by the Court

suggest a lack of judgment and competence.

Like the Hearing Committee, we draw inferences adverse to Petitioner's qualifications from the way in which he presented his own case in this reinstatement proceeding. It is most significant that he failed or refused to recognize both the opportunity given to him by the Hearing Committee to supplement the record and the devastating impact on his case of his failure to take advantage of that opportunity. Further, the fact that Petitioner continues to seek to have the underlying suspension vacated despite the fact that all avenues of appeal have long since been exhausted; his failure even now to accept the point that it was misconduct for him to seek to thwart his client's effort to plead guilty; and the fact that the oral argument before the Board was so seriously mishandled, all combine to lead the Board to the conclusion that Petitioner has fallen far short of demonstrating his present competence to practice law.

### VIII. *Conclusion*

For the reasons stated herein, and as presented by the Hearing Committee, the Board recommends that the instant Petition for reinstatement be denied.

In view, further, of the long and tortured history of these proceedings, and Petitioner's propensity to pursue reinstatement petitions which he should know fall short of the *Roundtree* requirements, the Board is concerned that Petitioner may, as soon as he is permitted to do so by D.C. Bar R. XI, § 16(g), again burden the system with another inadequate petition for reinstatement. If he does so, we respectfully submit that the petition should be viewed with special scrutiny to evaluate whether it reflects, as it would need to, significant change from his prior petitions. Accordingly, we submit that the Court

should, in its Order entered herein, provide that a future petition by Petitioner shall be deemed to be invalid on its face under D.C. Bar R. XI, § 16(d), unless, in addition to complying with all other aspects of the reinstatement questionnaire, it contains the information specified below. We recite this information because it is not called for by the questionnaire, which must be submitted with a reinstatement petition. *See* Board Rule 9.1.

(a) Evidence that Petitioner has recognized the seriousness of all his misconduct, including the misconduct involving neglect, failure to investigate, and failure to communicate with his clients;

(b) A plan for compliance with applicable rules relating to guilty pleas; and specific evidence, such as testimony by an expert in criminal law practice, to demonstrate that such a plan is workable in practice;

(c) Description of steps taken by Petitioner to assure present competence and to prevent future misconduct, including as examples, CLE courses, work as a paralegal, law clerk, or in some other capacity, establishing that he has maintained and/or renewed his legal skills;

(d) Evidence of present good character, to be demonstrated by testimony of identified character witnesses proffered to be familiar with the misconduct on which Petitioner's suspension has been based.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: s/Timothy J. Bloomfield

Dated: July 23 2003

All members of the Board concur in this Report and Recommendation.